## CHESNUTT v. HICKS et al.

No. 4915. Opinion Filed July 27, 1915.

Rehearing Denied February 29, 1916.

(155 Pac. 544.)

1. **APPEAL AND ERROR—Judgment—Equity—Evidence.** In a case of purely equitable cognizance the judgment of the trial court will not be disturbed upon appeal, unless from a review of the entire record it clearly appears that the same is against the weight of the evidence.

2. **VENDOR AND PURCHASER—Bona Fide Purchaser—Fraud of Grantor—Notice—Sufficiency of Evidence.** Evidence examined and **held** sufficient to sustain the judgment.

(Syllabus by Bleakmore, C.)

*Error from District Court, Cherokee County;*
*John H. Pitchford, Judge.*

Action by H. M. Chesnutt against John Hicks and others. Judgment for defendants, and plaintiff brings error. Affirmed.

See, also, 43 Okla. 167, 142 Pac. 404.

*Irwin Donovan,* for plaintiff in error.

*Bruce L. Keenan,* for defendants in error.

Opinion by BLEAKMORE, C. This action was commenced in the district court of Cherokee county on May 6, 1912, by the plaintiff in error as plaintiff, against the de-

fendants in error as defendants. The parties will be referred to as they appeared in the trial court. Plaintiff alleged, in substance, that he was the owner and entitled to the possession of a certain tract of land, the reasonable rental value of which was $140 per annum; that defendants were and had been in the possession and unlawfully withholding the same from him since the 1st day January, 1909; that defendants were claiming some right, title, or interest in and to said land, void as to him, but which cast a cloud upon his title, and prayed judgment for possession, damages, and the quieting of title in him. Defendants answered by general denial, and pleaded, further, that defendant Hicks was and had been the owner and in the undisputed possession of said land for more than six years; that the claim of plaintiff thereto was without right and interfered with the perfect enjoyment of defendants' ownership and title, etc. The cause was submitted to the court without a jury, and tried, apparently, as a suit in equity.

The land in question was acquired by defendant Hicks, a three-quarter blood Cherokee Indian, by patent issued pursuant to an act of Congress, and restrictions upon his power to alienate the same were removed December 27, 1905. He and his wife executed a conveyance of said land, in the form of a warranty deed, to one Robert Pollock, of date January 26, 1906. Pollock was then manager of the Peggs Trading Company. On November 30, 1908, Pollock executed a conveyance in form of a quitclaim deed, describing some 600 acres of land and embracing the tract in question to the plaintiff, Chesnutt, the consideration recited being $550, "and other good and valuable considerations, not herein mentioned." Chesnutt was a stockholder in the Peggs Trading Company. It was

claimed by the plaintiff that at the time of the execution of deed to Pollock the defendant Hicks was indebted to the Peggs Trading Company in the sum of $1,184 evidenced by his note, and that the consideration mentioned in said deed was received by said defendant by way of credit on said indebtedness. The books of the company were identified as being kept by and in the handwriting of Pollock, by the plaintiff, and with regard to the indebtedness of defendant, plaintiff testified:

"Q. You knew Mr. Pollock, from whom you bought this land? A. Yes, sir. Q. What business was he engaged in at that time? A. In charge of the Peggs Trading Company as manager and president. Q. Were you connected with the Peggs Trading Company? A. Yes, sir, I was a stockholder. Q. Is Mr. Pollock in the State of Oklahoma at the present time? A. No, sir. Q. Do you know where he is? A. No, sir. Q. Have you in your possession any of the books or accounts of the Peggs Trading Company? A. Yes, sir; all of them. * * * Q. Will you state what the condition of John Hicks' account was towards the close of January, 1906?

"Mr. Keenan: We object as incompetent, irrelevant and immaterial. (The objection is by the court overruled, to which the defendant excepts.)

"Witness: A. His account shows that he closed it by note on January 17th, for $1,180.25. Q. What is the next entry in that Hicks' aaccount? A. The next entry is February 7, 1906. Q. What is that entry? A. John Hicks by land, $840. Q. Mr. Chesnutt, have you any papers—any notes belonging to the Peggs Trading Company, showing the disposition of the balance of that account? A. That $1,180.25 account? Q. Yes. A. Yes; he gave us a note to balance his account after paying for the land. Here is the note, $340.25. * * * Q. That is a note of John Hicks for $340.25 to balance his account? A. Yes, sir. Q. Mr. Chesnutt, has anything been paid on this note for $340.25 since its date, February 10, 1906? A. Yes, sir.

Q. How much? A. $71.50 on the 7th day of November,. 1906.

"Mr. Donovan: I offer in evidence the note of John Hicks for the purpose of showing the acquiescence of John Hicks to the application of that money to his debt to the Peggs Trading Company."

A short time prior to the execution of the deed to Pollock, the land in question was let to and thereafter occupied by tenants of defendant Hicks under a lease for five years, by the provisions of which no rentals were payable during that term. One of these tenants testified that he was served with notice to vacate by Pollock, and that he called the same to the attention of Hicks, who informed him that he had sold the land to Pollock in consideration of a store account, and showed him some canceled notes made to the Peggs Trading Company, the amount of which he was unable to recall. Defendant Hicks testified that he had been in possession of the land about ten years; that Pollock had talked to him about selling the same; that he declined to sell; and that Pollock agreed to procure him a loan thereon of $800; that he thereafter made application for removal of his restrictions; that Pollock received his mail, and informed him that his restrictions had been removed; that Pollock came to his house about 6 o'clock in the evening of the day the deed bears date, and that he persuaded his wife to sign, and they there executed the deed, about midnight, to secure a proposed loan to him of $800, the money to be paid to him by Pollock at Pryor Creek; that he went there after it, but Pollock was absent, and the money was never paid to him at any time. He denied that he was indebted to the Peggs Trading Company in the sum of $1,184, but admitted that the note for $340.25, offered in evidence, concerning which the plaintiff testified, bore his signature. He fur-

ther testified that he was never indebted to the company in a sum greater than $75 or $80 at any time; that when the deed was executed he had paid his account in full and had receipts therefor.   The court found:

"That. the paper writing, purporting to be a deed from John Hicks and Mary Hicks, his wife, was made as a mortgage to secure $800; that no consideration was paid therefor; that the same should be canceled; that the paper writing, purporting to be a deed from Robert Pollock to H. M. Chesnutt, mentioned herein, should be canceled as a cloud on the title of John Hicks, defendant"

—and rendered judgment accordingly.

Plaintiff contends that the judgment is not sustained by the evidence, and urges here:

"(1) The evidence does not reasonably tend to sustain the finding of the lower court that the deed from the defendant John Hicks to Robert Pollock, through whom plaintiff claims, was intended as a mortgage and was without consideration.   (2) There is no evidence tending to charge plaintiff with notice of any defect in the title of Robert Pollock, the grantee in the warranty deed executed by defendant."

It is not claimed by the plaintiff that there was any consideration for the coneyance by Hicks to Pollock other than the credit given defendant upon his indebtedness to the Peggs Trading Company, but it is urged that the defendant satisfied his note of $1,184 by conveying the land and giving the note for $340.25, which was introduced in evidence (as stated by counsel) —

"for the purpose of showing the acquiescence of John Hicks to the application of that money to his debt to the Peggs Trading Company."

The trial court may have concluded that, induced by the fraudulent representation of Pollock, Hicks and his

wife executed the deed for the purpose of securing a loan of $800, which they never received; that Pollock, acting for the company to procure such conveyance, agreed to lend him that amount, not intending so to do, but purposing by such means to coerce the payment of Hicks' indebtedness to the trading company, or the court may have believed the testimony of Hicks to be true to the effect that the debt upon which the books show he was given credit was fictitious and never in fact contracted by him. In any event, the trial court, with its opportunity of observing those incidents which distinguish and characterize every trial, including the appearance and demeanor of the witnesses, impossible to accurately portray and present here by stenographic report of the proceedings, determined that the testimony of defendant Hicks that the deed to Pollock was intended as a mortgage to secure a loan of money never in fact made was true; and, viewing this case as one of purely equitable cognizance, we are not prepared to say that the finding of the court upon this issue is clearly against the weight of the evidence, or that it is not sufficiently sustained thereby. Therefore, the same will not be disturbed.

The testimony of plaintiff is that he was a stockholder in the trading company, and he appeared at the trial with all its books and accounts, and identified the entries therein as appearing in the handwriting of his grantor, Pollock. What portion of the stock he owned, and how intimate his connection with its business, is not shown. Whether when executed, or at or prior to the time of his purchase, he had knowledge of the fact, found by the court, that the deed from Hicks to Pollock was without consideration and intended as a mortgage was a matter of vital importance which he did not divulge. The fraud of his grantor, Pol-

lock, having been established to the satisfaction of the court, plaintiff could have prevailed only upon the theory that he was a purchaser in good faith for value and without notice; and his failure to at least offer his own testimony in this regard might properly have been considered in connection with the other facts and circumstances in evidence as tending to show notice. A review of the entire record inclines us to agree with the holding of the trial court to the effect that the plaintiff was not a *bona fide* purchaser. In *Brooks et al. v. Garner* (on rehearing) 20 Okla. 258, 97 Pac. 995, it is said:

"By the referee's findings, as is seen, the testimony does not show whether Mrs. Scarborough was such innocent purchaser or not, and he did not consider the proposition of whether or not it devolved upon her or the defendants to show that she was such a purchaser. On the reconsideration of this matter, we have investigated this question; and, in our judgment, the great weight of judicial expression on this proposition placed the burden upon her. In the decision rendered, while we did not find that Mrs. Scarborough had actual notice of the claim of Garner, we did find that, in view of the pleadings, issues and evidence, it was her duty to have testified, or to have her claim subjected to the unfavorable presumption arising by her failure, and that the burden was upon her to clear up for the court those things which she was in a pre-eminent position to do, and that this burden was not discharged by her. *Weber v. Rothchild*, 15 Ore. 385, 15 Pac. 650, 3 Am. St. Rep. 162. This rule is applicable in its full scope in cases of this character, where the law places the burden of proof upon the party who holds title to real property which is assailed on the ground of fraud."

It follows that the judgment should be affirmed.

By the Court: It is so ordered.