## NICKEL et al. v. JANDA et al.

No. 15407—Opinion Filed Nov. 10, 1925.

Rehearing Denied Dec. 15, 1925.

**1. Homestead—Intent to Abandon Rights—Question of Fact.**

Whether the owners of lands impressed with the homestead intended to abandon their homestead rights is a question of fact to be determined from all the facts and circumstances developed by the evidence in the particular case.

**2. Appeal and Error — Questions of Fact —Conclusiveness of Findings.**

If, upon the trial of issues of fact, a jury is waived, and the cause submitted to the court, a finding of fact made by the trial court upon conflicting testimony will not be reversed upon appeal if the testimony reasonably tends to support the judgment of the court.

**3. Acknowledgment — Deeds — Force of Notary's Certificate—Impeachment.**

A notary's certificate of acknowledgment to a deed, regular on its face, is strong evidence of the facts therein stated, and its impeachment can be sustained only by clear, cogent, and convincing testimony, and cannot be overcome by the testimony of the grantor alone, where the surrounding facts are as consistent with the truth of the certificate as they are with the denials of the grantor.

**4. Estoppel—Estoppel by Deed.**

Deeds are solemn instruments and it is right to suppose that what is stated in a deed represents the true state of things, and equity, justice, and good conscience require no more than that a party to such instrument should be precluded from contradicting it to the prejudice of another person when that other, or a person claiming through or under him, has been induced to alter his position on the faith of the instrument.

**5. Equity—Estoppel — Laches — Stale Demand.**

No arbitrary rule exists for determining when a demand becomes stale, or what delay may be excused, and the question of laches and equitable estoppel is to be decided upon the particular circumstances of each case.

**6. Same—Laches Independent of Statutes of Limitation.**

The doctrine of laches is peculiar to courts of equity. It exists independent of the statutes of limitation, and an action may be barred on account of the laches of the complainant for a shorter period than the period of limitation.

**7. Same—Delay in Seeking Rescission — Denial of Relief.**

In equity a complainant must have been diligent in seeking his remedy, and must not have slept upon his rights, and if, with knowledge of the facts which give him a right to seek rescission, he has been guilty of an unreasonable and unnecessary delay in availing himself of his remedy, a court of equity will deny him relief.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Canadian County; James I. Phelps, Judge.

Action by Mary J. Nickel et al. against Vaclav Janda et al. Judgment for defendants, and plaintiffs appeal. Affirmed.

Wright & Gill, for plaintiffs in error.

H. L. Fogg, for Vaclav Janda.

J. C. Snyder, for Yukon Mill & Grain Company.

George E. Merritt and M. A. Cox, for Commissioners of School Land Department.

Opinion by RUTH, C. On January 2, 1923, plaintiffs filed their action in the district court of Canadian county against the defendants, wherein plaintiff Mary J. Nickel alleges she is the widow of Francis M. Nickel, deceased; that she was never divorced or legally separated from Francis M. Nickel until his death about May 27, 1914; and the other plaintiffs are the children of Francis M. and Mary J. Nickel, and they entered upon and homesteaded certain lands in Canadian county in April, 1889, and continued to occupy the lands as a homestead until about October, 1911; that they never acquired any other homestead; that on August 9, 1910, Francis M. Nickel executed a deed to the lands to C. C. Pottenger, but Mary J. Nickel did not join in the deed; that C. C. Pottenger, in 1912, requested her to sign a quitclaim deed, and on June 24, 1912, she signed a quitclaim deed to the property, naming Francis M. Nickel as grantee, and forwarded same by mail. She then alleges the deed of record as signed by her has been altered since it was executed by her and before recordation, and that the deed to Pottenger and the quitclaim deed are void, and should be declared a nullity.

For a second cause of action, plaintiffs allege defendant Janda entered upon and took possession of the lands in 1912, under a deed from Patrick-Pottenger Company, a corporation, and pray cancellation of such deed, and pray the Jandas be ejected from the property; that Vaclav Janda and Elnora Janda executed a mortgage to the Commissioners of the School Land Office of the state of Oklahoma, on February 15, 1919, in the sum of $2,000, and executed a mortgage to the Yukon Mill & Grain Company on December 18, 1920, in the sum of $4,000, and plaintiffs pray cancellation of the mortgages. Plaintiffs further pray judgment in the sum of $4,000 as rentals of the lands from 1912.

The School Land Commissioners, in their answer, after first denying generally, set forth chronologically the various deeds and mortgages as follows:

June 13, 1908.—Mortgage from Francis N. Nickel and Mary J. Nickel to the Commissioners of the Land Office for $2,000;

Aug. 9, 1910.—Deed of Francis M. Nickel to C. C. Pottenger;

June 15, 1912.—Quitclaim deed of Mary J. Nickel to Francis M. Nickel, which deed recites that grantor resides in New Mexico, and waives any homestead rights in the property, and does not claim any homestead rights therein;

Sept. 27, 1910—Deed from C. C. and Leo Pottenger to P. S. Patrick;

Sept. 30, 1911.—C. C. Pottenger and J. S. Patrick deed to Patrick-Pottenger Co., a corporation;

Oct. 28, 1912—Deed of Patrick-Pottenger Co. to Vaclav Janda:

Jan. 31, 1914.—Vaclav Janda made application for a renewal of the loan of $2,000 made by the Commissioners of the School Land Department; and on

June 13, 1914.—Janda executed renewal mortgage to the School Land Department and said loan was renewed after examination of the title and in full reliance upon the quitclaim deed of Mary J. Nickel;

Feb. 15, 1919.—Mortgage of Vaclav Janda and Elenor Janda to the Commissioners of the School Land Department in renewal of the former loans.

And they further state it was never their intention to, and the School Land Department never did, release and discharge the loan and mortgage made by Francis M. Nickel and Mary J. Nickel, and the same is now unpaid, and defendants state that plaintiffs are estopped by their actions in remaining silent and acquiescing in the statement in

the quitclaim deed from claiming title to the lands.

Yukon Mill & Grain Company's answer is a general denial, and substantially the same defense as set up by the School Land Department with reference to reliance upon the quitclaim deed of Mary J. Nickel.

Defendants Janda, denying generally, allege a valuable consideration paid for the land; peaceful, uninterrupted and adverse possession of the land for more than ten years prior to the filing of this action; reliance upon the deeds of Francis M. Nickel and Mary J. Nickel, and plead estoppel and laches, and also state that they have expended the sum of $8,500 in making lasting improvements on the land, and in their cross-petition pray their titles may be quieted in the lands. Patent from the United States government to Nickel and all deeds and mortgages are set forth in the various pleadings, or evidence. A jury was specifically waived, the cause tried to the court, and judgment rendered quieting title in Vaclav Janda and Elenor Janda, and declaring the mortgage of the School Land Department a first lien on the premises, the mortgage of the Yukon Mill & Grain Company declared a second lien, and enjoining the plaintiffs from asserting or setting up any claim adverse or hostile to the possession and title of Vaclav Janda; and plaintiffs appeal.

Plaintiffs present their appeal upon seven assignments of error and argue them under one proposition, to wit:

"The court erred in overruling motion of plaintiffs in error for a new trial"; and urge thereunder "The judgment of the court is not sustained by the evidence or is contrary thereto."

The uncontroverted evidence is that the Nickels "homesteaded" this land and lived on it until 1909, when Francis M. Nickel and Mary J. Nickel separated and all the live stock, farming implements and other property were sold at public sale, and Francis M. Nickel took up his residence in Oklahoma City, Oklahoma county, Okla., and Mary J. Nickel went to New Mexico. She took her children with her and lived with her son, one of the defendants. Mary J. Nickel states she returned to the lands in 1910 or 1911, and lived there a short time. The evidence on this point is conflicting and was determined by the court in favor of the defendants.

"In an equitable action, the presumption is in favor of the finding of the trial court, and it will not be set aside unless clearly against the weight of the evidence." Weaver v. Drake, 79 Okla. 277, 193 Pac. 45; Weitz v.

Richardson, 101 Okla. 81, 222 Pac. 977; Chestnutt v. Hicks, 55 Okla. 655, 155 Pac. 545; J. B. Edgar Grain Co. v. Kolp, 48 Okla. 92, 149 Pac. 1096.

"If, upon the trial of issues of fact, a jury is waived, and the cause submitted to the court, a finding of fact made by the trial court upon conflicting testimony will not be reversed upon appeal if the testimony reasonably tends to support the judgment of the court." Dustin Grocery & Feed Co. v. Lucas, 91 Okla. 11, 215 Pac. 417; Chadwell v. Brown, 88 Okla. 44, 211 Pac. 410; Lockett v. U. S. Fidelity & Guaranty Co., 89 Okla. 142, 214 Pac. 687; Bank of Big Cabin v. Lyons, 91 Okla. 1, 215 Pac. 427.

To the same effect are the following: Parks v. Roach, 88 Okla. 19, 210 Pac. 402; Bernard v. McRay, 89 Okla. 1, 213 Pac. 82; McLaughlin v. Yingling, 90 Okla. 159, 213 Pac. 552; Davis v. Keeche Oil & Gas Co., 89 Okla. 226, 214 Pac. 711; Denison v. Phipps, 87 Okla. 299, 211 Pac. 83; and Smith v. Lindsey, 91 Okla. 8, 215 Pac. 791.

Mary J. Nickel admits she signed a quitclaim deed to the lands in the year 1912, wherein she named Francis M. Nickel as grantee, and that this deed was signed by her while she was living in New Mexico with her son, but she claims the deed was altered, after she executed the same, by the insertion of the following words, to wit:

"Grantor states that the above described real property is not her homestead and she hereby waives any or all homestead rights or rights of dower, and further states that her home is now in New Mexico and that she claims no homestead rights in the above described real property."

There was an attempt to corroborate Mary J. Nickel's testimony that the foregoing clause was not in the deed when she executed it, but the witness, Frank Nickel, one of the plaintiffs, who was present at the execution of the quitclaim deed, and claimed to have read it very carefully, when asked several times if the deed had the following clause in it: First, "Together with all and singular, the hereditaments and appurtenances thereunto belonging, to have and to hold the above granted premises unto the said Frank Nickel, his heirs and assigns," answered that he did not believe it did, not to his knowledge; Second, "Did it have this statement: 'Unto the said party of the second part, his heirs and assigns forever, all rights, title, interest and estate, claim and demand in equity, in and to the following described premises'?" to which Frank Nickel answered that he did not think it did, and also stated that he did not think the warran-

ty clause was in the deed, but when shown the deed he admitted he must have been mistaken, but was positive the clause waiving homestead, etc., was not in it, but as he had stated, until confronted with the deed, that the habendum, tenendum and warranty clauses were not in the deed he read so carefully, we are inclined to the opinion that he has no clear recollection of what was in the deed, and his evidence is of little value.

If the grantor in a deed leaves blank spaces in the deed which may be filled in by the grantee, we cannot say she was free from all negligence in delivering the deed in such a condition, and where she acknowledges the deed before a notary, the presumption is strongly in favor of the validity of the deed, and this presumption can only be overcome by clear and convincing testimony of such weight and cogency as to satisfactorily establish the wrongful conduct charged.

In Stidham v. Moore, 100 Okla. 26, 227 Pac. 128, this court said:

"A notary's certificate of acknowledgment, regular on its face, is impeached only by clear and convincing testimony; presumptive truth of notary's certificate cannot be overcome solely by testimony of grantor when circumstances are as consistent with the truth thereof as with denials. A notary's certificate of acknowledgment to a deed regular on its face is strong evidence of the facts therein stated, and its impeachment can be sustained only by clear, cogent and convincing testimony. After the lapse of a number of years, and after the death of the notary, the presumptive truth of his certificate is not overcome by the testimony alone of the one named in such certificate as grantor, where surrounding facts and circumstances are as consistent with the truth of the certificate as they are with the denials of the grantor."

See, also, Moore v. Adams, 26 Okla. 48, 108 Pac. 392; Adams v. Porter, 58 Okla. 225, 158 Pac. 899; Harn v. Interstate Bldg. & Loan Co., 77 Okla. 265, 188 Pac. 343; Peoples Gas Co. v. Fletcher (Kan.) 105 Pac. 34; Gabbey and Wife v. Forgeus, Adm'rs. (Kan.) 15 Pac. 866; Riley v. Riley (N. Dak.) 84 N. W. 347; Fish v. Poorman (Kan.) 116 Pac. 898; 2 Wharton on Evidence, 932, 1019; Rice's Evidence, page 302; and Pomeroy's Equity Jurisprudence, 859, 862.

To permit a grantor who negligently leaves blank spaces in a sealed instrument to come into court, after a lapse of ten years after the death of the grantee, and allege that the blank spaces were filled in after the execution and delivery of the deed, and prevail

upon her own uncorroborated statement, would so seriously affect titles as to result in chaos, and the rule announced in the authorities cited is reasonable and equitable and should be sustained, particularly where the rights of innocent purchasers or mortgagees, who relied upon the recitals in the deed, have intervened.

Caspersz, in his work on Estoppel and Res Judicata (3rd. Ed.) pp. 282, 283, says:

"Deeds are called solemn instruments.* * * It is right to suppose that what is stated in deeds, and other similar documents, represent the true state of things, and consequently, parties should not be allowed afterwards to question the truth of what has been deliberately stated. * * * Under these circumstances, it appears to us that justice, equity, and good conscience require no more than that a party to such an instrument should be precluded from contradicting it to the prejudice of another person, when that other, or the person through whom the other person claims, has been induced to alter his position on the faith of the instrument."

Earl, J., in Stroughill v. Buck, 14 A. & E. (Q. B.) 781, says:

"I have no doubt that a recital by one party of a state of facts, on the faith of which another party was induced to enter into the contract, is an estoppel in favor of the party who entered into the contract on the faith of it."

"The rule is, a general recital does not work an estoppel, but the recital of a particular fact does work an estoppel. Park, B., in Carpenter v. Buller, 8 M. & W. 209; Southeastern Railway Co. v. Warton, 6 H. & U. 520; Carter v. Carter, 3 K. & J. 617."

In 16 Cyc. 152, title "Equity," it is said:

"No arbitrary rule exists for determining when a demand becomes stale, or what delay may be excused, and the question of laches is to be decided upon the particular circumstances of each case," citing authorities.

"The most frequent case of laches consisting of delays working prejudice to defendant through change of circumstances is where the plaintiff has slept on his rights, and permitted defendant to make valuable improvements on property in controversy, or to make large expenditures in reliance on his title thereto." 16 Cyc. 162.

"Accordingly the protection which equity affords to bona fide purchasers of land without notice of an adverse claim plaintiff is chargeable with unreasonable delay, often put upon the ground of laches." 16 Cyc. 165.

We are therefore of opinion that the evi-

dence so far considered reasonably sustains the judgment of the trial court.

Plaintiffs contend that the deed from Francis M. Nickel to Pottenger was void, because the lands were impressed with a homestead, and the burden was upon the defendants to prove the homestead was abandoned and no other homestead acquired by Nickel and his family, citing Long v. Talley, 84 Okla. 38, 201 Pac. 990; Fletcher v. Popejoy, 87 Okla. 185, 209 Pac. 746; Hawkins v. Corbit, 83 Okla. 275, 201 Pac. 649; Fetterman v. Franklin, 88 Okla. 1, 211 Pac. 403; American State Bank of Covington v. Laforce et ux., 95 Okla. 88, 218 Pac. 1075.

An examination of the cases cited shows they are clearly not in point, and it is unnecessary to set out the facts therein.

The facts in the case under review certainly preponderate in favor of an intention to abandon the lands as a homestead. Francis M. Nickel and Mary J. Nickel separated in 1909. They held a public auction of all their personal property. Francis M. Nickel took up his residence in Oklahoma City, and Mary J. Nickel took up her residence in New Mexico, and while she testifies she returned to the lands in 1911, and remained there for a few months, the evidence on this point in conflicting.

There is no conflict in the testimony that she has lived in New Mexico and Texas from 1911 until this action was tried in the district court of Canadian county in 1923. She knew the lands had been conveyed to C. C. Pottenger and the deed had been filed and recorded, and she executed the quitclaim deed with full knowledge of this fact. She never claimed or asserted any right, title, interest or estate in and to these lands until this action was filed. She never collected or attempted to collect any rents from the same for a period of 13 years, and until the defendant Janda had expended $8,500 in erecting barns and other buildings on the lands. Mary J. Nickel further testified that she had not visited Oklahoma since 1911, but when her son and daughter came up from Texas (about one year before the trial of this case in 1923) shortly before this action was filed, and they learned from a lawyer that "she had a chance for the land; that there was a chance to file a lawsuit against it; that she had never been near the land since October, 1911, until she learned of the possible chance of recovering the land, and she knew when she signed the quitclaim deed she deeded away her rights," and her action necessarily presents the question of equitable laches, acquiescence and estoppel, neither new nor novel in courts of conscience.

The doctrine of acquiescence may be stated thus:

"If a person having a right, and seeing another person about to commit, or in the course of committing, an act infringing upon that right, stands by in such a manner as to really induce the person committing the act, and who might otherwise have abstained from it, to believe he assents to its being committed, he cannot afterwards be heard to complain of the act, * * * and is no more than an instance of the law of estoppel by words or conduct." Caspersz, Modern Estoppel & Res Judicata (3rd Ed.) p. 67.

This court has passed upon the question of laches and equitable estoppel in Skinner v. Scott, 29 Okla. 364, 118 Pac. 394, wherein it is said:

"The doctrine of laches is peculiar to courts of equity. It exists independent of the statutes of limitations; and an action may be barred on account of the laches of the claimant for a period shorter than the statutory period of limitation. 'A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands. Nothing can call forth this court into activity but conscience, good faith and reasonable diligence. When these are wanting, the court is passive and does nothing. * * *' Plaintiff must not only allege the impediments which have prevented him from prompt prosecution of the same, but he must also produce evidence explaining his delay; and if he fail to do so at the hearing, the court may, upon its motion, refuse to grant relief. 'The complainant must have been diligent in seeking his remedy, and must not have slept upon his rights; and if, with knowledge of the facts which gave him a right to seek rescission, he has been guilty of an unreasonable and unnecessary delay in availing himself of his remedy, a court of equity will deny him relief."

See, also, Washington v. Morton, 90 Okla. 142, 216 Pac. 457; Horrigan v. Gibson, 87 Okla. 1, 206 Pac. 219.

The remaining proposition presented as error goes to the introduction of evidence as to Francis M. Nickel and Mary J. Nickel having separated and not having been living together. The only question objected to, to which an answer was made, was as follows: "Q. You had quit living together, hadn't you? A. Yes, sir." We cannot view this question in any objectionable light. The case revolved around the proposition as to

whether the parties had separated and had abandoned the land as a homestead, and evidence had already been introduced by the plaintiff proving conclusively that the husband and wife had separated in 1909, and had never lived together since that separation, the husband living in Oklahoma City, Okla., until his death in 1914, and the wife living in New Mexico and Texas until she learned that some lawyer had advised her son and daughter that recovery of this land could be had if suit was brought praying its recovery.

Having reached the conclusion that the trial court committed no error in quieting title to the lands in Vaclav Janda and denying plaintiffs the relief prayed, it will be unnecessary to consider the question presented respecting the mortgages executed by Vaclav Janda to the Yukon Mill & Grain Company and to the Commissioners of the School Land Department, and the judgment of the trial court should in all matters be affirmed.

By the Court: It is so ordered.

Note—See under (1) 29 C. J. pp. 935. § 350; 966, § 412; 13 R. C. L. p. 647, et seq.; 3 R. C. L. Supp. p. 69; 4 R. C. L. Supp. p. 825; 5 R. C. L. Supp. p. 7054. (2) 4 C. J. p. 979, § 2853; 2 R. C. L. p. 194: 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. 90; 5 R. C. L. Supp. p. 79. (3) 1 C. J. pp. 893, § 275; 896, § 284; 899, § 284; 1 R. C. L. p. 297; 1 R. C. L. Supp. p. 93 5 R. C. L. Supp. p. 20. (4) 21 C. J. p. 1088, § 68. (5) 21 C. J. p. 217, § 217. (6) 21 C. J. pp. 212. § 212: 214, § 212; 256, § 251. (7) 9 C. J. p. 1200. § 81; 21 C. J. p. 214, § 212.