## WINN v. WILLMOTT.

No. 19189. Opinion Filed Jan. 22, 1929.

Rehearing Denied Oct. 1, 1929.

F. E. Riddle, for plaintiff in error.

Everest, Dudley & Brewer, for defendant in error.

TEEHEE, C. Appellee, John W. Willmott, plaintiff below, brought suit against appellant, W. O. Winn, defendant below, to quiet his title to certain realty against certain adverse claims asserted by defendant. The original action was directed also against a codefendant, who was, on plaintiff's motion, dismissed from the case, and by intervention others were made parties defendant, who were by the court likewise dismissed upon plaintiff's statement that interveners' cross-action against him may be refiled thereafter at their election. Our consideration of the cause will not require further notice of the parties thus dismissed from the original action.

In his petition plaintiff alleged ownership and possession of the property, and that defendant was asserting an undivided one-eighth interest therein under a deed of conveyance of record, which instrument it was alleged conveyed no title, for that the grantors therein were without interest in the property at the time of such conveyance, by reason whereof the record of the deed constituted a cloud upon plaintiff's title, to his injury and damage in the full use and enjoyment of his property.

By answer, defendant denied plaintiff's ownership, and pleaded his own claim of interest under the deed of conveyance by plaintiff alleged to be ineffective, and a further interest in the moiety of an undivided seven-eighths interest in the premises by virtue of an oil and gas lease granted to him by his grantors in the deed of conveyance. By cross-petition defendant deraigned his title and interests immediately by and through one Meliskoche Scott, a one-half blood Seminole Indian, in that she was the sole and only heir at law of one Rhoda Cumsey, a full-blood Seminole Indian, to whom the lands involved were allotted, whose death

occurred in 1901; that his title and interests were acquired from said Meliskoche Scott, joined by her husband, James Scott, under the instruments above mentioned, the lease being dated February 6, 1927, and the deed February 14, 1927; alleged that plaintiff's claim of title was predicated mediately upon a certain purported deed executed in August, 1908, which deed it was alleged was void for that if the signatures of his, defendant's, grantors appear on said deed, they were obtained by fraud, trickery, and deception, the existence of which deed the grantors therein were without knowledge until in June, 1926, and that plaintiff by, under and through said void deed, had entered upon and developed the premises into productive oil and gas property, from which such minerals have been produced in large quantities, the volume thereof being unknown to defendant and by plaintiff disposed of, the proceeds thereof having been appropriated by plaintiff to his own use without regard to defendant's interests therein, and for which disposition and appropriation plaintiff should be required to account; and thereupon prayed for appropriate affirmative relief. Plaintiff, by reply, denied new matter in the answer, and all allegations of fact in the cross-petition.

The controlling issue framed by the pleadings was the validity of the deed of August, 1908, alleged by defendant to be void and without conveyance of title for that it was a forgery. The cause was tried to the court without the aid of a jury. The court found generally, and rendered judgment for plaintiff, of which action of the court the defendant complains. The material error assigned is that the judgment is against the weight of the evidence, and therefore is contrary to law.

The deed of August, 1908, was the touchstone of plaintiff's claim of title and ownership. As shown by the record, the land in controversy was allotted to one Rhoda Cumsey, a full-blood Seminole Indian. The trial proceeded on the theory that Meliskoche Scott was the sole heir and inherited the property upon her ancestor's death in 1901, and by and through whom as such heir both parties claimed their respective interests. The deed, regular on its face in execution and acknowledgment thereof, was placed of record in August, 1908. It therefore was presumptively valid, and conveyed the title to the property (Brown v. Harmon, 115 Okla. 277, 242 Pac. 1047; Barteldes Seed Co. v. Border Queen Mill & Elevator Co., 23 Okla. 675, 101 Pac. 1130), unless it was without conveying force as by defendant alleged. In order to overcome this presumption of validity, defendant was required to produce clear, unequivocal and convincing evidence of its invalidity. Nickel v. Janda, 115 Okla. 207, 242 Pac. 264; Fast v. Gilbert, 102 Okla. 245, 229 Pac. 275.

The parties having any knowledge of the challenged transaction at the time of trial, were the heir and her husband as the grantors, the scrivener, who was an attorney, and the notary public as the attesting officer, the grantee and his agent who had negotiated the transaction having died prior to the filing of the action. Of these parties defendant produced the grantors to overcome the presumption of the validity of the deed. The sum and substance of their testimony was to the effect that they each denied a sale of the property in controversy, with Meliskoche Scott admitting the execution of two instruments, the one being a deed to a part of her own allotment for a consideration of the amount fixed in the controverted deed which she received, and the other as she thought being a copy thereof, and with her husband, James Scott, admitting that the signature in his name to the challenged deed was his autographic signature.

In rebuttal plaintiff produced the scrivener whose testimony, upon refreshing his memory from an inspection of the deed, was to the effect that the same was prepared by him upon the request of the parties, and by the grantors executed in his presence; that the signature of the attesting officer was genuine; and, as he understood the transaction, that it was the intention of the grantors by that instrument to transfer inherited property.

From the details of the testimony of these witnesses, it is clear that there was a lack of unequivocation which is easily explainable, in that they were undertaking to bring to the view and hearing of the court the acts and conversations of parties in their relationship to a transaction which had transpired 19 years prior to the giving of their testimony. And this is no cause for marvel, for it must be recognized that, with an intervention of 19 years, with each succeeding year stealing something of the alacrity of the human spirit, a haziness of memory in the attempt at original narration of the transaction is likely to be manifest. If we therefore eliminate the rebuttal testimony for that reason, as by defendant is urged, the net result upon the question of forgery

would be the uncorroborated testimony of the grantors with the same not entirely free from equivocation.

Defendant contends, however, that the testimony of his witnesses must be treated as corroborated, in that the plaintiff failed to produce the notary public, whose absence was excused by plaintiff on the ground that he had left the state on a vacation prior to his being advised of the time fixed for the trial, as this failure might carry with it the presumption that the testimony of the absent witness would have been unfavorable to plaintiff. We think this entirely too speculative to be considered as an element in the case, for if, in fact, the grantors had acknowledged the execution of but one instrument, it might be said with equal force that defendant's failure in diligence to have avoided the absence of the notary as, by having taken his deposition, his testimony might have been unfavorable to defendant, as the record shows that the witness was equally accessible to him as well as to the plaintiff, his residence not being within the county of trial. In Fulsom Morris Coal & Mining Co. v. Mitchell, 37 Okla. 575, 132 Pac. 1103, there is laid down as a principle of law that:

"The failure of a party to introduce a competent witness, who is equally accessible to both the parties litigant, and equally under the legal control of either party, raises no unfavorable inference, and is not a circumstance to be considered against him."

Furthermore, the record shows that plaintiff and those under whom he claims have been in the open and peaceable possession of the property involved to the time of trial for 19 years; that the deed challenged has been of record from the time of its execution, in 1908, as notice to the world of all that it imports upon its face, without a thought of challenge thereof by anyone until it appeared that the land was valuable for oil and gas purposes by reason of the discovery of such minerals within the immediate territory of its situation about two years prior to the filing of the suit, when, on a number of occasions, Meliskoche Scott was approached by different parties with the suggestion that she had an interest in the property, and with the final result that defendant secured the instruments affecting the property alleged by plaintiff to constitute clouds upon his title.

It is well settled that:

"A notary's certificate of acknowledgment to a deed. regular on its face, is strong evidence of the facts therein stated, and its impeachment can be sustained only by clear, cogent, and convincing testimony, and cannot be overcome by the testimony of the grantor alone, where the surrounding facts are as consistent with the truth of the certificate as they are with the denials of the grantor."

And that:

"The evidence to impeace a certificate of acknowledgment should be clear, cogent and convincing, and such as produces a conviction amounting to a moral certainty that the certificate is false." Nickel v. Janda, supra; Fast v. Gilbert, supra; Pittsburg Coal & Mining Co. v. Wright, 122 Okla. 210, 253 Pac. 487.

In Griffith v. Scott, 128 Okla. 125, 261 Pac. 371, it is held:

"In chancery cases, the court hears the oral testimony of the witnesses, and, like the jury, considers the witnesses, observes their intelligence and capacity, their fairness or bias, their manner or characteristics, and has the opportunity for judging the value of their testimony; and, therefore, the findings of fact are the same as the verdict of a jury, and will not be disturbed on appeal, unless manifestly against the weight of the evidence."

In that case the court quoted with approval from Putnam City Co. v. Minnetonka Lbr. Co., 95 Okla. 148, 218 Pac. 1061, as follows:

"In an equitable action, the finding of the trial court should be sustained unless it appears that its findings are clearly against the weight of the evidence. The findings of the trial court should be strongly persuasive, and should not be set aside unless the Supreme Court can say, in equity and good conscience, that the conclusion reached by the trial court is clearly against the weight of the evidence."

Upon the whole record, therefore, we cannot, in equity and good conscience, say that the judgment complained of is against the clear weight of the evidence, by reason whereof the judgment of the district court is affirmed.

BENNETT, REID, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.