**EQUITABLE FARM MORTGAGE CO. et al. v. LEEPER et al.**

No. 21472.   Oct. 10, 1933.

Rehearing Denied Nov. 28, 1933.

Everest, Dudley & Brewer, for plaintiffs in error.

Welty & LaFon, for defendants in error.

RILEY, C. J. The question presented by this appeal is whether the mortgage lien of defendants in error is a valid first lien on the premises involved, prior and superior to the claims and interests of the plaintiffs in error, or whether it has been canceled and released by "(a) a release thereof in writing appearing to have been regularly executed and acknowledged and filed of record prior to the date plaintiffs in error or any of them acquired their interests in the land, or (b) by the execution and delivery of a general warranty deed appearing of record purporting to have been executed and delivered by defendants in error to the owner of record, the mortgagor, prior to the date of the mortgage here in question."

The record discloses that on and prior to January 2, 1925, defendants in error, herein referred to as plaintiffs, were the owners of the S. W. quarter of the S. W. quarter of section 24, township 12 N., range 1 W. I. M. in Oklahoma county, less a small portion thereof comprising a part of the right of way of the Chicago, Rock Island & Pacific Railway Company, and a small portion thereof theretofore conveyed to the county for highway purposes. About that time plaintiffs executed a written contract to sell and convey said land to William Maxey and Pauline Maxey for the sum of $4,000. Thereafter, on January 1, 1926, plaintiff executed and delivered to said William and Pauline Maxey a general warranty deed conveying said land to them, not excepting the strip of land theretofore conveyed to the county for highway purposes. The Maxeys executed and delivered the mortgage in controversy to secure the purchase price represented by eight promissory notes of $500 each, the first becoming due on the first day of January, 1928, and one note maturing on the first day of January each year thereafter. The mortgage was filed for record April 24, 1926. The notes were dated January 1, 1926.

Thereafter, on May 8, 1926, there was filed in the office of the county clerk a release of said mortgage, regular in form, acknowledging full payment and satisfaction of said mortgage, purporting to have been signed by Oscar L. Leeper and Carrie L. Leeper, and purporting to have been acknowledged in due form before Lottie Gilliland, a notary public in Oklahoma county.

On May 10, 1926, the Maxeys borrowed some $2,000 from the Equitable Farm Mortgage Company and executed their mortgage on said land to secure said loan, and also executed a second mortgage on the land to the same company to secure notes aggregating $756.95. After the execution of said mortgage, but before payment of the money, the Equitable Farm Mortgage Company required a correction deed from the Leepers to the Maxeys. Thereafter, May 19, 1926, there was filed for record a warranty deed from the Leepers to the Maxeys conveying the same land except as to the description which excepted the small strip theretofore conveyed to the county for highway purposes. This deed was dated May 10, 1926. Plaintiff in error Fidelity National Bank thereafter acquired a mortgage lien, and the other defendants acquired certain interests in the land.

About December 31, 1927, the Maxeys conveyed the land to W. H. Flynn subject to certain mortgage liens then of record. On May 7, 1928, plaintiffs commenced this action to foreclose the mortgage and set aside the purported release thereof and cancel same of record, and also asked to cancel the deed purporting to be executed by them to the Maxeys dated May 10, 1926.

With reference thereto plaintiffs alleged that they did not execute said release or said deed, and that both were absolute forgeries, and were made, executed, and recorded in some manner unknown to them, and that they did not know or discover the existence of said release or deed of record nor the perpetra-

tion of the fraud nor the commission of the forgery until on or after March 5, 1928.

Defendants Equitable Farm Mortgage Company and Fidelity National Bank answered and alleged that they paid out the money represented by their respective notes and mortgages in good faith relying upon the genuineness and validity of the release of the Leeper mortgage as of record, and specifically denied that same was a forgery. Defendant Equitable Farm Mortgage Company also pleaded that before it would pay out the money to the Maxeys it required that they procure and have recorded a deed from Oscar L. Leeper and Carrie L. Leeper warranting and relinquishing their right, title, and interest in and to said premises, and that said deed was so executed by said Oscar L. Leeper and Carrie L. Leeper.

Issues being joined as to the validity of said release and deed, the cause was tried to the court without a jury, resulting in the finding and decree that the mortgage of plaintiffs was a first and prior lien on said premises, and decreeing that the pretended release of said mortgage as appearing of record be canceled and set aside and held for naught; that the deed from Oscar L. and Carrie L. Leeper to the Maxeys be held and adjudged to be a correction deed, upholding and foreclosing the plaintiff's mortgage.

After the cause was tried, defendant W. H. Flynn died and the cause as to him was revived in the name of Eva P. Thomas Flynn, executrix of the estate of W. H. Flynn, deceased. From said judgment and decree this appeal was prosecuted.

The specifications of error relied upon are that the decision is contrary to the evidence and unsupported by the evidence, and that the court erred in canceling the release and upholding the mortgage of plaintiffs as a prior lien on said land. Defendants contend that the law is that the unsupported and uncorroborated evidence of a grantor, where the instrument appears to have been signed and acknowledged in due form, is not sufficient to overcome the certificate of acknowledgment of the notary public.

That this is the general rule must be conceded. It has been so held by this court in a number of cases. Pittsburg Coal & Mining Co. v. Wright, 122 Okla. 210, 253 P. 487; Posey v. Van Tuyl, 135 Okla. 50, 273 P. 887; Eneff v. Scott, 120 Okla. 33, 250 P. 86; Nickel v. Janda, 115 Okla. 207, 242 P. 264; Fast v. Gilbert, 102 Okla. 245, 229 P. 275.

But in Pittsburg Coal & Mining Co. v. Wright, supra, this court specifically held that the testimony of the grantor alone may be sufficient, if in view of the circumstances and probabilities of the particular case it produces a condition amounting to a moral certainty that the certificate is false.

Plaintiffs both testified positively that they did not sign the release of the mortgage or the deed. They also testified positively that they did not appear before any notary public and acknowledge either of said instruments, and that they had no knowledge whatever of the existence of either until about March, 1928.

This court is committed to the doctrine that, in order to overcome the certificate of a notary public to an acknowledgment of any instrument affecting the title of real estate, the party attacking the same must produce evidence so as to produce a condition amounting to a moral certainty that the certificate is false; or that the evidence of the falsity of such certificate must be clear, cogent, and convincing before a court will be justified in holding it false, and that the unsupported testimony of the grantors is insufficient to overcome the same.

In this case the certificate of acknowledgment to the deed in question was supported to some extent by the testimony of the notary and of the husband of the notary. There were no circumstances in connection therewith or probability appearing therefrom that the certificate was false. Consequently the trial court did not find nor hold that the plaintiffs did not sign and acknowledge the deed. The court did hold that if such deed was executed, it was merely a correction deed. There is ample evidence and circumstances tending to support such finding. It appears that in the original deed from the Leepers to the Maxeys no exception was made as to the small strip of land amounting to about 14/100 of an acre which Leeper had theretofore conveyed to the county for highway purposes. The president of the Equitable Farm Mortgage Company testified that it was at his suggestion that the deed be executed and for the purpose of correcting the description; that the deed was prepared in his office and given to Mr. Maxey to have executed; that it was returned to him appearing to have been signed and acknowledged in due form, and that he compared the signatures thereon with the signatures on the original deed and they corresponded. The deed in question could not be produced, as it was shown

233

that it had been returned to Maxey and that he had left the country.

As to the release of the mortgage, a different situation appears. The record discloses that the purported release was filed in the office of the county clerk, and after being recorded was returned to Mr. Maxey. Shortly after the date of the correction deed, the plaintiffs, Oscar L. Leeper and Carrie L. Leeper, husband and wife, who then lived in Guthrie, moved to California. They kept the notes and mortgage. Mr. Leeper testified that the interest on all the notes was paid in full for the year 1926, about January 2 or 3, 1927; that about January 5, 1928, he received through the United States mail a letter purporting to have been written and signed by W. M. Maxey, containing a check dated January 1, 1928, signed by W. M. Maxey, drawn on the Stockyards Bank in the sum of $820; that being the amount due on the first note and interest on the eight notes for the year 1927; that the signature to the letter and check was the genuine signature and in the handwriting of Maxey; that he deposited the check in the Bank of Whittier, California, for collection and asked the bank to send it direct. The Bank at Whittier, California, sent the check to the Stockyards Bank in Oklahoma City, and that bank returned the check marked "No Acct." He then testified relative to some correspondence had by the California bank with the Stockyards Bank, but this testimony was subsequently stricken by the court. He testified that after some correspondence with an attorney in Oklahoma City he first learned of the existence of record of the release of the mortgage.

These facts and circumstances, as we view the record, tend strongly to corroborate the testimony of Mr. and Mrs. Leeper concerning the execution of the so-called release, and by reason thereof the evidence as a whole tends strongly to uphold the plaintiffs' contention and appears to be clear, cogent, and convincing.

It is contended that the facts and circumstances are such as show that it is improbable that the release was a forgery. The evidence shows that the Maxeys remained on the land until about January 14, 1928. The testimony of Lottie Gilliland, the notary before whom the release purported to have been acknowledged, appears to be frank and without evasion. It is clear that parties representing themselves to be Oscar L. Leeper and Carrie L. Leeper appeared before her and acknowledged the purported release.

But she did not identify the plaintiffs as being the persons. The most she would say was that they were at least similar.

It is urged that it is entirely improbable that if Maxey had forged the release and caused a fraudulent and false asknowledgment thereof to be made, he would have remained on the land and in the vicinity subject to arrest and prosecution at any time and especially for a period of nearly 20 months. But it appears that he knew the plaintiffs had moved to California and were not likely to examine the records as long as he made payments of interest on the notes. If the notes had been paid in full and the mortgage fully satisfied as recited in the purported release, there would have been no occasion for him to pay the interest on the $4,000 for the full year 1926 promptly when it would otherwise have become due. He was on a deal to sell the land to Flynn about January 21, 1928, and as soon as the deal was completed and before plaintiffs discovered the forgery, he left the country and his whereabouts from that time were unknown.

This accounts fully for his sending the check and letter about the 1st of January, 1928.

It is contended that if plaintiffs did in fact execute the correction deed, then it had the effect of releasing the mortgage regardless of the purported release, and the defendants had the right to rely absolutely upon the deed as evincing an absolute and clear purpose to convey the title without any mortgage lien.

This contention is not well taken. In the first place, the president of the Equitable Farm Mortgage Company, Mr. Rose, testified that he relied upon the abstract and release when he paid out the money. That the correction deed was obtained at his suggestion; that it was prepared in his office as a correction deed and was obtained for no other purpose. There is nothing in the record to indicate that the correction deed was given for any purpose other than to correct the description of the land contained in the original deed or that it was in any way intended as a release of the mortgage lien.

From the record as a whole, we are satisfied that the trial court was correct in holding the purported release of the mortgage a forgery and that the correction deed did not have the effect of releasing the mortgage. The judgment of the trial court seems to be correct except as to a clear error in

computing the amount of interest. Plaintiffs testified positively that the interest for the year 1926 was fully paid. The principal debt was $4,000, the rate of interest is 8 per cent., which rate from January 1, 1927, to November 10, 1928, the date of the judgment, could not amount to $915.48.

It is apparent that in preparing the journal entry the testimony of the plaintiffs relative to the interest for the year 1926 was overlooked. Neither side has raised this question, and we assume that when it is called to the parties' attention the correction will be promptly made.

Judgment should be, and is hereby, affirmed, with directions to correct the error in the amount of interest if requested.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, BAYLESS, and WELCH, JJ., concur. BUSBY, J., not voting. OSBORN, J., absent.