FOREMAN VS MIDLAND VALLEY RY. CO.

Opinion rendered Sept. 26, 1907.

(104 S. W. Rep. 806).

1. *Railroads—Water—Obstruction.*

Railroad culverts must be so constructed, that water flowing in streams during floods and ordinary high water will not be impeded by them.

2. *Same—Lands Flooded.*

By Act Cong. May 2, 1890, 26 Stat. 94, c. 182, § 31, the general laws in force in Arkansas at the close of the session of the General Assembly in 1883 and published in Mansfield's Digest in 1884, shall be enforced in the Indian Territory, By Mansf. Dig. § 566 (Ind. Ter. Ann St. 1899, § 465 q.) the common law shall be the rule of decision whenever applicable in Arkansas. Hence a railroad company is not liable because surface water has flooded another's land on account of the construction of its road. This decision was rendered by the Supreme Court of Arkansas at the close of the session of 1883.

3. *Same—Sufficiency of Complaint.*

A complaint in an action against a railroad company for overflowing land alleging that the company had its embankment constructed so that it obstructed the natural flow of water from above same and that it "retains the back water from" a stream which causes the water to flow upon the farm of plaintiff states a cause of action as against a demurrer, but an attack may be made upon it by a motion to make it more specific in regard to impeding the water in the streams and to eliminate the allegations pertaining to surface water.

4. *Demurrer.*

In a complaint which states a good cause of action, a demurrer will not lie, but must be met by a motion that it be made more sure and specific.

Error to the United States Court for the Western District of the Indian Territory; before Justice Wm. R. Lawrence, April 14, 1906.

Action by Johnson Foreman against the Midland Valley Railway Company. There was a judgment for defendant

rendered after sustaining a demurrer to the complaint, and plaintiff brings error.    Reversed and remanded.

This is an action brought by the plaintiff in error to recover damages from the defendant railway company alleged to have been sustained by him because of the overflow of plaintiff's land by reason of the careless and negligent construction of the embankment on the company's right of way running through his land.    There was a complaint and an amended complaint filed.    So much of the amended complaint as is material to an understanding of this case is as follows:    "That the defendant in the year 1904 built and constructed an embankment upon and through a portion of plaintiff's said farm, *    *    *    and constructed an embankment on said farm on George's Fork creek in such a careless and negligent manner as to cause water to back up and stand on plaintiff's farm for such a length of time and in such a manner as to greatly injure and practically destroy the growing crops upon 200 acres of plaintiff's said farm.    *    *    * ·    That by reason of the negligently, deficiently, and carelessly constructed embankment as aforesaid, during the month of June, 1904, a great body of water was detained upon plaintiff's said farm and floated down and off plaintiff's fence from around his said farm, whereby he lost 3,775 rails,    *    *    *    to his damage in the sum of $75,    *    *    *    and that, by reason of the water accumulating and standing upon said farm as aforesaid, plaintiff's crops of corn, cotton, and other things that were upon said farm were destroyed," etc.    To this amended complaint the following general demurrer was filed:    "Said amended complaint does not state facts sufficient to constitute a cause of action against this defendant to entitle the plaintiff to the relief prayed for."    The demurrer was sustained, and, the plaintiff refusing to further plead, judgment was rendered for defendant.

*Brook & Brook*, for plaintiff in error.

*Soper, Huckleberry & Owen,* for defendant in error.

CLAYTON, J. (after stating the facts as above). The only question to be determined here is: Did the complaint set up a good cause of action? All 'of the authorities agree that in the construction of a railway it is a duty devolving upon the company to so construct its embankments, bridges, and culverts that the water flowing through running streams shall not be impeded; and this does not mean simply the amount that usually passes through them. In the construction of these works, they are required to look forward, and leave op'enings sufficient to carry off all waters resulting from such floods and freshets as might reasonably be anticipated, so that they will pass as freely through the channel of the stream as they did before the erection of the works, being only relieved from this duty as against the flow of water resulting from extraordinary and unforeseen floods . As to the flow of surface water, the rule in this jurisdiction is the exact reverse. The act of Congress entitled, "An act to provide a temporary government for the Territory of Oklahoma, to enlarge the jurisdiction of the United States Court in Indian Territory and for other purposes," approved May ·2, 1890 (26 Stat. 94, c. 182, § 3), provides that chapter 20, Mansfield's Digest of the Laws of Arkansas, entitled "Common and Statutory Law of England," shall be extended and put in force in the Indian Territory. Section 566 of that chapter (Ind. Ter. Ann. St. 1899, § 465q) provides that the common law of England, so far as applicable, shall be the rule of decision in that state. And, as there is no statute charging the common-law rule in this respect, it is in force in this jurisdiction. In the case of So. Pac. R. vs Walker 165 U. S. 593, 16 Sup. Ct. 1206, 41 L. Ed. 312, the Supreme Court of the United States say: "Does a lower landholder by erecting embankments or otherwise preventing the flow of surface water on to his premises render himself liable to an upper landowner for damages caused by

the stopping of such flow? In this respect the civil and common law are d fferent, and the rules of the two laws have been recognized in different states of the Union; some accepting the doctrine of the civil law that the lower premises are subservient to the higher and that the latter have a qualified easement in respect to the former, an easement which gives the right to discharge all surface water upon them. The doctrine of the common law, on the other hand, is the reverse, that the lower landowner owes no duty to the upper landowner, that each may appropriate all the surface water that falls upon his own premises, and that the one is under no obligation to receive from the other the flow of any surface water, but may in the ordinary prosecution of his business and in the improvement of his premises by embankments or otherwise prevent any portion of the surface water coming from such upper premises. * * * It would be useless to cite the many authorities from the different states in which on the one side or the other these doctrines of the civil and the common law are affirmed. The divergency between the two lines of authorities is marked, springing from the difference in the foundation principle upon which the two doctrines rest, the one affirming the absolute control by the owner of his property, the other affirming a servitude, by reason of location, of the one premises to the other." In that decision elaborate citations are approvingly made from Railway Co. vs Hammer, 22 Kan. 763, 31 Am. Rep. 216; Gibbs vs Williams, 25 Kan. 214, 37 Am. Rep. 241; K. C. & E. R. Co. vs Riley, 33 Kan. 374, 6 Pac. 581; Hoyt vs Hudson, 27 Wis. 656, 9 Am. Rep. 473. See, also, Henderson vs Minn., 20 N. W. 322, 32 Minn. 303; Abbott vs Railroad Co., 83 Mo. 271, 53 Am. Rep. 581; Hanlin vs Railroad Co., 61 Wis. 515, 21 N. W. 623; Livezey vs Schmidt, 96 Ky. 441, 29 S. W 25; Pye vs Mankato, 31 N. W. 863, 36 Minn. 90, 1 Am. St. Rep. 654; Olson vs St. Paul, etc., R. Co., 37 N. W. 953, 38 Minn. 419.

But it is said that the Supreme Court of Arkansas in passing upon this statute, has held to the rule of the civil law, and therefore that construction of the statute is the law of this jurisdiction. And it is true that, if that construction had been given to the statute by that court prior to the close of the session of the General Assembly of Arkansas of 1883, it would be binding on us as statutory law here. But, whatever may have been the construction of the statute since that time, it is quite certain that the common-law rule was adhered to and in force in Arkansas up to that time. The language of the act of Congress of 1890, supra, is: "Sec. 31. That certain general laws of the state of Arkansas, in force at the close of the session of the General Assembly of that state (Arkansas) of eighteen hundred and eighty-three, as published in eighteen hundred and eighty-four in the volume known as Mansfield's Digest, * * * are hereby extended over and put in force in the Indian Territory." And it was the laws that were in force at the close of the session of the Legislature of 1883, and not the Arkansas laws that were in force at the time of the passage of the act of 1890, that were extended over us; and therefore, as the laws in Arkansas at the close of the session of the Legislature of 1883 were in force as they had been construed by the highest court of that statute, it was the construed laws that were put in force here, and therefore it is that the construction given to those laws by the Supreme Court of that state up to that time were extended with the statute, or, to speak more correctly, perhaps, the construed statutes were the laws in force there, and therefore the laws in force here. We must then look to the interpretation of the common-law statute given to it by that state at that time. In the case of Little Rock & Ft. Smith Railway Co. vs Chapman, 39 Ark. 474, 43 Am. Rep. 280, decided at the November, 1882, term of that court and before the statute went into effect, the court say: "With regard however, to surface water, not confined

to well-marked channels or banks, this court has always re-
cognized a difference. It has never adopted the civil-law rule
that lower lands of one proprietor are subservient to the higher
lands of another for the drainage of surface and percolating
water. The doctrine of the common law, as found in all the
cases, was that, for the purpose of draining, building, or any
other useful and proper object, each proprietor had the right
to elevate the surface of his own lands or to ward off the influx
of surface water from his neighbor's, without liability." It is
true that in that case the court pointed out some exceptions to
the rule and applied them to that case; but they are not material
to the decision of this case. The next case, in point of time
relating to this question, decided by the Arkansas Supreme
Court, was Springfield & Memphis R. Co. vs Henry, 44 Ark.
364, in which it was decided that: "If by the construction of
the roadbed and ditches, the surface water is diverted from
its usual and ordinary course and by means of embankments
or ditches is conveyed to any particular place and thereby
overflows land which did not overflow before, the company
will be liable to the landowner for the injury." This case was
decided at the November, 1884, term, two years after the
decision in Railway vs Chapman, supra, and, as by the terms
of the federal statute the statutes of Arkansas were to be in
effect as they were "in force at the close of the session of the
General Assembly of Arkansas" in the year 1883, this decision
does not apply, and as the decision in the case of Railway Co.
vs Chapman, adhering to the common-law rule, was the con-
struction placed upon the statute at the close of the General
Assembly of 1883, it is binding upon us.

The only question in this case, then, is: Does the
complaint allege careless construction of the works so as to
wrongfully impede the flow of the water of George's Fork creek?
Or does it allege only damages arising from such construction
of the works as prevents the flow of surface water, and causing

it to back up on to plaintiff's premises. If it allege the first though imperfectly, it is good as against a general demurrer. If it only allege the latter, it is bad. The only allegation in the complaint which at all attempts to state a common-aw liability is as follows: "And that said embankment was so negligently, deficiently, and carelessly constructed by the defendant as to prevent the free and natural flow of water that falls above such embankment as to remain upon plaintiff's farm, and *said embankment also retains the back water from George's Fork creek, and thereby causes said waters to stand upon plaintiff's said farm for an unusual length of time, and to the great damage*," etc. Only that which we italicize is material. The other is set out that a full understanding of the allegation as to the water that flows from the stream may be had. We are of the opinion that, while the allegation is defectively and inartistically set out, there is enough stated to have informed the court that water which was not surface water, but that which flowed from the creek, had, by the imperfect construction, as alleged, of the embankment, been impeded in its flow and retained upon plaintiff's land for a time longer than it would have been if the work had been properly constructed, and to plaintiff's damage; and therefore a cause of action is stated, but, it must be confessed, very imperfectly so. It is the law under our practice that if a good cause of action be at all stated anywhere in a complaint, no matter how imperfectly, that a demurrer will not lie. It must be met by a motion to make more specific and certain. Had this been done in this case, the plaintiff would have been required to state specifically wherein and how the works were deficient, and all matters necessary to give the opposite party full information upon which he could have framed an answer or interpose a demurrer. The theory of our practice is that a complaint imperfectly stating a cause of action, whether by stating too little or too much, must be made as perfect as the facts will admit by a

motion to make more specific and certain if the facts are insufficiently stated, and a motion to strike out if there be redundant or immaterial matter stated. After this is done, if the facts stated do not justify a recovery, a demurrer will be be sustained; otherwise, the complaint calls for an answer. In this case a motion to make more certain as to the defects of construction of the railway relating to the impediments of the flowing water through the stream should have been filed and sustained; and a motion to strike out all of the complaint relative to backing up of the surface water should have been filed and also sustained. The complaint then should have been amended so as to cure the defects of the count alleging wrongful impediment of the current of the stream, and all relating to surface water should have been stricken out. The complaint would then have stated a cause of action which would not be demurrable. And this is the procedure required by our statute in cases where the complaint defectively states a cause of action, or where immaterial or redundant matter is set up, as in this case.

We think the demurrer should have been overruled by the court below, and, for this error, the judgment is reversed and remanded.

GILL, C. J., and TOWNSEND, J., concur.