## MOORE v. ADAMS *et al*.

No. 910. Opinion Filed March 8, 1910.

(108 Pac. 392.)

**DEEDS—Fraud—Presumptions—Evidence—Failure to Offer—Sufficiency.** In cases where fraud is alleged in the procuring of the execution of written instruments or deeds, the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel the opposing presumptions.

(a) It should be of such weight and exigency as to satisfactorily establish the wrongful conduct charged; honesty and fair dealing as a rule being presumed.

(b) When it lies within the power of a party to an action to produce evidence upon an issue and he fails, the presumption follows that the evidence, if produced, would be unfavorable to the cause of such party.

Kane, J. dissenting.

(Syllabus by the Court.)

*Appeal from the United States Court for the Western District of the Indian Territory, at Muskogee; Wm. R. Lawrence, Judge.*

Action by Zeke Moore against Richard C. Adams, trustee, and others. There was a directed verdict for defendants, and plaintiff brings error. Affirmed.

*Bailey & Kistler, Harry Miller,* and *T. L. Camp,* for plaintiff in error.

*Zevely, Givens & Smith,* for National Oil & Development Co.

*Hutchings, Murphey & German,* for F. J. Boudinot and Richard C. Adams, trustee.

No briefs reached the reporter.

WILLIAMS, J. On March 12, 1906, Zeke Moore, the plaintiff in error, who was enrolled as a member of the Creek Tribe as Zeke Moore, and not as Ezekiel Moore, executed to Stella Moore his warranty deed to the 40 acres of land in controversy in the name of Ezekiel Moore, and on the 17th day of March, 1906, Stella Moore conveyed same to Franklin Miller, who, in turn, on the 30th day of April, 1908, conveyed the same to Wm. F. Seibold, he on the 30th day of April, 1906, conveying same to George Bixby. He on the same day conveyed the same to Horace M. Adams and Judson M. Adams. The said Judson M. Adams on the 23d day of August, 1906, conveyed his undivided half interest to Horace M. Adams, who on the 11th day of September, 1906, conveyed the entire tract to Richard C. Adams, trustee, and John D. Merry. On the 17th day of September, 1906, the said John D. Merry conveyed his undivided half interest to Frank J. Boudinot. On the 7th day of November, 1906, Earl Shoenfeldt went to the United States penitentiary at Ft. Leavenworth to procure a new deed in favor of Richard C. Adams, as trustee, and Frank J. Boudinot, from Zeke Moore, who at the time he executed the deed to his sister, Stella Moore, as well as on November 7, 1906, was confined therein as a prisoner. At the time Moore executed the deeds to the defendants in error Richard C. Adams, as trustee, and Frank J. Boudinot, the statement was made by the said Shoenfeldt that they desired to correct the name in the deed. There is no proof in the record showing that at that time the defendants in error or either of

them had any information that there was any contention that Zeke Moore was not 21 years of age at the time he executed the deed to Stella Moore, or that Zeke Moore did not know his true age. At the time Zeke Moore conveyed this land to his sister it was undeveloped oil land. At the time the defendants in error Richard C. Adams, trustee, and Frank J. Boudinot, procured the last deed, the defendant in error oil company was making preparations to develop the same for oil, and, as far as this record shows, the only purpose in procuring these additional deeds was in order that the deraignment of title might be the same in name. This was a reasonable precaution, and essential in having the abstract passed on with a view of using same as security either by the owners of the land or the holders of the oil lease, then proceeding to place improvements, etc., thereon.

The plaintiff in error selected his own forum, bringing this as an action at law in the United States Court of the Indian Territory at Muskogee, which was tried prior to the erection of the state. It is conceded by counsel for defendants in error Adams, trustee, and Boudinot, that the evidence as to what was said when the deed was executed was admissible under the original pleadings. The only object of the request for the amendment by counsel for the plaintiff in error in the trial court was that such evidence might be considered in the trial of said cause. So, in the consideration of this case, this evidence will be considered as properly admitted under the original pleadings. The question then arises as to whether the trial court was justified in directing a verdict in favor of the defendants in error.

In the case of *Myrick v. Jacks,* 33 Ark. 429, the court said:

"Fraud must be shown and proven at law. In equity it suffices to show facts and circumstances from which it may be presumed."

This case was decided by the Supreme Court of the state of Arkansas at its May term, 1878. The same code of procedure relative to law and equity was in force then as was afterwards extended to the Indian Territory by acts of Congress of May 2, 1890, and March 1, 1895. The prior construction of such procedure by the Supreme Court of Arkansas was also brought over. *Nat. Live*

*Stock Com. Co. v. Talliaferro,* 20 Okla. 177, 93 Pac. 983; *C., O. & G. R. Co. v. Burgess,* 21 Okla. 653, 97 Pac. 271; *Foreman v. Midland Valley Ry. Co.,* 7 Ind. T. 478, 104 S. W. 808.

We have searched the record and failed to find any evidence tending to show that Zeke Moore did not understand the contents of the two deeds executed to Richard C. Adams, trustee, and Frank J. Boudinot on November 7, 1906, or that he did not know the effect of such instruments or of the proposed development for oil, or his true age at the time the deeds were executed. If plaintiff in error was a minor when the first deed was executed to his sister, Stella, he is presumed at such time to have known of such minority and that such deed was absolutely void. There is not a scintilla of evidence in the record to rebut such presumption. If he, after becoming of age, for a separate, independent, and valid consideration, though the same may have been inadequate, with a knowledge of the invalidity of the former deed and the situation so as to judge for himself, willingly executed said deed, the same is valid. Kerr on the Law of Fraud and Mistake, p. 186. If the plaintiff in error did not know his exact age or that the former deed was invalid, or had no knowledge of the proposed development of said 40 acres of land for oil, and the then status, such evidence was peculiarly within his power to produce; and the same neither having been produced, nor any reason shown why he did not give said evidence, the presumption of law is against him on that point.

As to what was said to him at the time he signed said deeds there is no dispute. There is no character of evidence showing that there was made to him any false or fraudulent representation, or that anything was done to ratify any prior act of plaintiff in error, or that defendants in error or their agent bore any confidential relation relative to the plaintiff in error. It appears that the plaintiff in error wrote his own name and there is nothing tending to show that he was not an intelligent or educated negro. The plaintiff in examining Harper, the notary who took the acknowledgments of Zeke Moore to the two deeds, does not attempt to prove all that was said, but merely a statement as to the purpose of taking the deeds, to wit, to correct Zeke Moore's name in relation to

the transfer to his sister, Stella. ·But he does not go further to show that Zeke Moore did not read the deeds or did not understand them, or thought he was signing deeds to his sister, nor is there anything to show that, as a result of said ˙statement, said deeds were signed. As shown by the record, the sole consideration for executing the same was the sum of $100 cash in hand paid to him. True, it appears that at the time of the execution of the deeds and the receiving of the money he was confined in the United States penitentiary at Ft. Leavenworth in the state of Kansas, but there is nothing to show in what tribunal he was convicted, whether in˙a federal court sitting within the Indian Territory or some other territory, or the District of Columbia, or a state, or of what charge he was convicted. The fact that he may have been confined in the penitentiary and was not.on an equal footing with the grantees at the time these deeds were executed, and the consideration received was grossly inadequate, he not having knowledge of such inadequacy, or of the then status, these facts might, without more, have been sufficient for the question of fraud to be submitted to the jury. But ·there is no evidence in the record tending to show that Zeke Moore did not know the value of this 40 acres of land, and of the intention to prospect for oil thereon, nor is there anything to show that the agent of the defendants in error or the defendants in error bore such a relation to the plaintiff in error on account of his being confined in the United States penitentiary as to have any advantage over him in this transaction. It may be contended, however, that the plaintiff in error, being confined in the United States penitentiary at Ft. Leavenworth, was incompetent to testify, and for that reason he was unable to repel such presumption. But there is nothing to show that at the time of the trial he.was confined in the penitentiary. His term may have terminated so far as the record goes. But, assume that it had not, if he was incompetent to testify, the burden rested upon the party seeking to excuse him from testifying to establish such incompetency by evidence which would be by the judgment roll of conviction, and, if that showed a conviction of a disqualifying crime in the same jurisdiction, that would suffice, and then the burden would

shift to show a reversal of the judgment or pardon or removal of such disqualification. 1 Wigmore on Evidence, § 523, p. 653; *Logan v. United States,* 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 431. Section 1974 (section 2859, Mansf. Dig. Laws Ark.) Ind. T. Ann. St. 1899, which controlled in the forum where this case was tried, to wit, United States Court for the Western District of the Indian Territory at Muskogee, provides that persons convicted of a capital offense or of perjury, subornation of perjury, burglary, robbery, receiving stolen goods, forgery, or counterfeiting, except by the consent of the parties, shall be incompetent to testify. Convictions for violations of the laws then in force in said territory against the sale, bartering, giving away, furnishing, or introducing of intoxicating liquors into said territory, manslaughter, assault with intent to kill, abduction, bigamy, maiming, kidnapping, removing property mortgaged or subject to other lien, and numerous other offenses defined as felonies by statutes then in force in said jurisdiction were punishable by imprisonment in the federal penitentiary, but such convictions did not *per se* render the convicted party incompetent as a witness. There was no effort on the part of the plaintiff in error to excuse himself from not testifying, and, so far as this record is concerned, it is to be assumed that he was a competent witness. It is a well-settled rule that when it lies within the power of a party in interest in an action to produce evidence upon an issue, and he fails, the presumption follows that same, if produced, would be unfavorable to his cause. *M., K. & T. Ry. Co. v. Ward,* 1 Ind. T. 670, 43 S. W. 954; 4 Wigmore on Evidence, sec. 2486, p. 3525. In this case the burden is on the plaintiff to make out his case, and especially is it the plaintiff's duty by evidence to rebut every negative presumption when he presumably has peculiar knowledge enabling him to meet such presumption.

In the case of *Insurance Co. v. Rammelsberg,* 58 Kan. 531, 50 Pac. 446, Mr. Chief Justice Doster, in delivering the opinion of the court, said:

"In all civil actions the party asserting the affirmative of an issue is entitled to prevail upon the production by him of a preponderance of evidence, but in cases where fraud in the execution

of written instruments is charged the question may well arise: How greatly must the evidence of such fraud preponderate? Will the overbalancing of the scale by so much as a hair's weight suffice, or must the excess be decided, convincing and satisfactory? Considering that honesty and fair dealing are always presumed, and that fraud must always be proved, and that the writings of parties are supposed to fully and correctly set forth their engagements, it cannot be that a barely appreciable overweight of evidence is sufficient to overcome such presumptions, together with the testimony of witnesses fortifying the same, convict one of the parties of moral turpitude, and set aside his deliberately executed agreements. It is true that the law in such cases requires nothing but a preponderance of evidence, but it requires that preponderance to be great enough to overcome all opposing evidence and repel all opposing presumptions. In order to do so, it should be of such weight and cogency as to satisfactorily establish the wrongful conduct charged. The authorities are uniformly to this effect, and it will be sufficient to cite only the approved text-books, where the statement of the rule will be found together with citations in its support. 2 Wharton on Evidence, §§ 932, 1019; 1 Rice's Evidence, p. 302; 2 Pomeroy's Equity Jurisprudence, §§ 859-862."

In the case of *Lalone et al. v. United States*, 164 U. S. 255, 17 Sup. Ct. 74, 41 L. Ed. 425, Mr. Justice Peckham in delivering the opinion for that court said:

"In all proceedings instituted to recover moneys or to set aside and annul deeds or contracts or other written instruments on the ground of alleged fraud practiced by a defendant upon a plaintiff, the rule is of long standing, and is of universal application, that the evidence tending to prove the fraud and upon which to found a verdict or decree must be clear and satisfactory. It may be circumstantial, but it must be persuasive. A mere preponderance of evidence which at the same time is vague or ambiguous is not sufficient to warrant a finding of fraud, and will not sustain a judgment based on such finding."

In the case of *United States v. Maxwell Land Grant Company*, 121 U. S. 325, 7 Sup. Ct. 1015, 30 L. Ed. 949, the court said:

"We take the general doctrine to be that, when in a court of equity it is proposed to set aside, to annul, or to correct a written instrument for fraud or mistake in the execution of the instrument itself, the testimony on which this is done must be clear,

unequivocal, and convincing, and that it cannot be done upon a bare preponderance of evidence which leaves tne issue in doubt. If the proposition as thus laid down in the cases cited is sound in regard to the ordinary contracts of private individuals, how much more should it be observed where the attempt is to annul the grants, the patents, and other solemn evidences of title emanating from the government of the United States under its official seal."

The Maxwell Land Grant Case is also quoted with approval by Mr. Justice Brewer in the case of *United States v. American Bell Telephone Co.*, 167 U. S. 224, 17 Sup. Ct. 809, 42 L. Ed. 144.

In this case, the deed executed by the plaintiff in error to the defendants in error was acknowledged before a notary public, the plaintiff in error signing his own name and presumably understanding the contents of the instrument and reading the same. No false representations being made to him, and the sole moving cause being the consideration of $100 cash in hand there and then received, without any proof of any ratification when the presumptions against the plaintiff in error and in favor of the legality of the last instruments are considered, the question then arises as to whether, the fact being that he was confined in prison, the defendants in error should have disclosed to him that said 40 acres of land was to be prospected for oil. Assuming that it was the duty of the defendants in error or their agent to so inform him, such is presumed to have been done, wrong not as a rule being presumed to have been done (Kerr on Fraud, p. 384), and there is not one scintilla of evidence in this record that he was not so informed. Mr. Chief Justice Doster in the Kansas case lays down the rule that it requires that preponderance of evidence to be great enough to overcome all opposing evidence and repel all opposing presumptions. The plaintiff in error in this case was the party in interest, and it is to be assumed that, under the record in this case, he was competent to testify, and thereby overcome or repel such presumption. It thus being within his power to overcome it, and not doing so, under the circumstances, we are not prepared to say the lower court erred in directing a verdict in favor of the defendants. 4 Wigmore on Evidence, § 2493, p. 3535.

The judgment of the lower court is affirmed.

. .DUNN,. C. J., and HAYES and TURNER, JJ., concur; KANE, J., dissents.