**BROWN, Adm'r, et al. v. HARMON et al.**

No. 15479—Opinion Filed Jan. 12, 1926.

**1. Husband and Wife—Conveyance of Separate Property by Wife Alone.**

Under the law of this state a married woman may convey her separate property, not the homestead, without her husband joining in the deed.

**2. Deeds—Fraudulent Procurement—Proof.**

Where fraud is alleged in procuring the execution of a deed, the proof, to sustain the allegation, must be of such weight as to satisfactorily establish the wrongful conduct charged; honesty and fair dealing as a rule being presumed. A mere preponderance of evidence, which at the same time is vague and ambiguous, is not sufficient to warrant a finding of fraud, and will not sustain a judgment on such finding.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by I. E. Harmon, Carrie Anderson, and Wister Anderson, against Charley Brown, as administrator of the estate of Henry Williams, deceased, et al. Judgment for plaintiffs, and defendants appeal. Reversed.

Brown, Brown & Williams, E. P. Hill, and J. E. Williams, for plaintiffs in error.

Brett & Brett and Wilkins & Wilkins, for defendants in error.

Opinion by RAY, C. This suit was commenced in the district court of Carter county May 30, 1918, by I. E. Harmon, joined by Carrie Anderson and Wister Anderson, against the heirs and administrator of Henry Williams, deceased, to cancel a deed to 40 acres of land in Carter county, the allotment of Carrie Anderson, a Chickasaw freedman, executed by Carrie Anderson to Henry Williams, deceased, on the 8th of March, 1910, and filed of record March 14, 1910, upon the ground that its execution was secured by fraud, and to cancel another deed purporting to have been signed and acknowledged by Carrie Anderson and Wister Anderson, her husband, upon the 8th of March, 1910, upon the ground that it was a forgery, and to quiet title in the plaintiff I. E. Harmon. A default judgment was entered in favor of the plaintiffs on the 20th of May, 1919. January 4, 1921, defendants filed a motion to set aside the default judgment because of irregularities in the proceedings by which it was obtained. April 3, 1923, defendants' motion to set aside the default judgment was sustained as to Floyd Williams, Earl Williams, and Helen Williams, minor heirs of Henry Williams, deceased, and as to Ora Yates, but the court found that Mattie Williams, the widow, was regularly and legally in court and declined to vacate the default judgment as to her. The three minor heirs, by their guardian ad litem, filed their answer and cross-petition, in which they denied generally and specifically the allegations of the petition, and alleged that the deeds executed by Carrie Anderson and her husband, Wister Anderson, to Henry Williams, deceased, were in good faith and for valuable consideration, and prayed that title be quieted in them as to their respective interests. April 19, 1923, Mattie Ligons, formerly Mattie Williams, widow of the deceased Henry Williams, and Ora Yates, a daughter of the deceased Henry Williams, filed their answer and cross-petition, denying generally and specifically the allegations of the petition, and alleging that certain deeds and oil and gas leases had been executed and filed of record which constituted a cloud upon their title, and prayed that title be quieted in them as to their respective interests in the land as heirs of Henry Williams, deceased. Other issues were joined between the plaintiffs and the heirs of Zach Harmon, deceased son of the plaintiff I. E. Harmon, not necessary to be considered here. The case was tried November 28, 1923, and resulted in a judgment in favor of the plaintiffs, quieting the title in plaintiff I. E. Harmon and the heirs of Zach Harmon, deceased. The defendants have appealed.

For reversal, defendants rely upon two principal propositions: First, that Carrie Anderson was an incompetent witness, and second, that the judgment is contrary to the clear weight of the evidence. Plaintiffs concede that Carrie Anderson was incompetent as a witness to testify to any conversation or transaction had with the deceased, Henry Williams, but say that she was made a competent witness by the cross-examination of the defendants; but, after a careful consideration of the evidence, we think it is unnecessary to pass upon that question for the reason that plaintiffs' evidence, including the testimony of the plaintiff Carrie Anderson, was wholly insufficient to sustain the judgment.

To sustain the allegation that the deed executed by Carrie Anderson and acknowledged before D. T. Strawn, a notary public, March 8, 1910, and filed for record March 14, 1910, was induced by fraudulent repre-

sentations of Henry Williams, plaintiffs rely upon the testimony of four witnessses. D. T. Strawn, a notary public, offered as a witness on behalf of plaintiffs, testified that he remembered taking the acknowledgment of Carrie Anderson to a document which he remembered as a deed; that since taking the acknowledgment he had been a resident of Texas, and had lost his notarial record; that he took the acknowledgment in Mr. Whitaker"s store; that as he remembered it, Mr. Whitaker and a Mr.Higgins were present; that Carrie Anderson signed the deed by mark; that he thought he read the deed over to her, as that was his rule, especially where the deed was signed by mark. He was confident that he read the deed over to her; that she did not say anything to indicate that she did not know it was a deed; that nothing was said about a lease; that he would not have taken an acknowledgment to the deed if there had been anything to indicate that she thought it was a lease; that nothing was said to indicate that she did not know what the instrument was; that he thought the two witnesses, H. E. Higgins and Thomas Whitaker, who witnessed Carrie Anderson"s mark, knew what the instrument was; that Wister Anderson was not there at the time the deed was acknowledged, and that he did not take Wister Anderson's acknowledgment. The deed as recorded shows that Wister Anderson signed the deed as grantor with Carrie Anderson. The instrument was acknowledged before D. T. Strawn, notary public, by Carrie Anderson only.

Carrie Anderson testified that she could not read or write; that she signed the deed by mark; that Wister Anderson, her husband, was not with her at the time she signed the instrument, and, in response to the direct question:

"Q. What did you understand that instrument signed to be?" answered: "A lease." "Q. You say you thought it was a lease? A. Yes, sir. Q. State whether or not you ever received anything for that instrument. A. No, sir. Q. Were any improvements to be placed on there for the price of the land? A. Yes, sir. Q. Did they put those improvements on there? A. No, sir. Q. Did they dig a well? A. Yes, sir. Q. Did they build a fence? A. No, sir. Q. Chain Young put some fence around it? A. I think he did. as well as I remember, and had a well dug."

She further testified that Henry Williams did not pay her anything for the land; that she knew Henry Williams was occupying the place, by a tenant, from the time the instrument was signed until he was killed in 1912. She did not receive any rent and did not ask for any rent either from Henry Williams or his tenant until after Williams' death in 1912. On cross-examination she admitted that she and Henry Williams went before Mr. Strawn, a notary public, and that she signed the deed by mark, which she thought at the time was a lease; she did not remember whether the deed was read over to her; did not remember whether any explanation was made to her as to what the instrument was. Asked as to the terms of the lease which she thought she was giving Henry Williams, she answered: "It was so that he was to have a well put on there and some fences built and put out an orchard." When asked how much rent he was to pay she did not remember.

"Q. Wasn't it a fact that the consideration for that five years lease was that Henry was to fence the place, plant an orchard, and dig a well? A. Yes, sir."

Wes Phillips, who testified that he went with Henry Williams to Ardmore at the time Williams filed the deed for record, testified:

"Q. Did he say anything about her thinking it was a lease or anything of that kind at the time she signed it? A. He said she thought it was a lease. Q. Did he say anything about having put anything over her? A. Yes, sir. By the Court: Do I understand you to say she thought she was signing a lease at the time she signed that deed? A. Yes, sir. Q. Did Henry say anything to you about making any representations to Carrie about signing this lease before he would build any fences or dig any well? A. Yes, sir; he said she would have to give him a lease before he would build a fence or drill a well. Q. Did he say to you he told her that? A. Yes, sir."

Chain Young, tenant on the land from the time the deed was executed till Williams' death, testified that Henry Williams tried to sell him the place, and, in response to questions asked on direct examination, answered:

"Q. And you wanted to buy it from him and he gave you as the reason why he couldn't sell it was because of the title? A. Yes, sir; he spoke to me, or I spoke to him, and we got to talking about the papers and mentioned this paper and said he would deed it back to her some time, and yet he was trying to deed it to me."

This is the evidence on which plaintiffs rely to prove that the deed was executed on the false representation by Williams that the deed was in fact a lease.

The evidence shows that the deed executed by Carrie Anderson March 8, 1910, and recorded March 14, 1910, as appears from the

recorded instrument, was also signed by Wister Anderson as grantor but not acknowledged by him. The second deed, as appears from the instrument as recorded, purports also to have been executed by Carrie Anderson and Wister Anderson and appears to have been executed on the same day and acknowledged by them before the same notary public as the first deed. The deeds appear to be identical in form except as to the acknowledgment. It is clear from the evidence that the latter deed was a forgery, especially as to the acknowledgment. The evidence is conflicting as to whether the first deed was signed by Wister Anderson. Carrie Anderson testified that he did not sign it. Wister Anderson testified that at the request of Carrie Anderson he did join with her in one deed conveying the land to Henry Williams, but that he did not acknowledge it.

The evidence shows that Carrie Anderson was married to Henry Williams, deceased, about 1902; that Henry Williams was sent to the penitentiary for cow stealing. After he returned from the penitentiary he married another woman, one of the defendants in this case, and thereafter lived in what is now Okfuskee county, where his wife and children appear to have been residing at the time of the conveyance of this land in question, and, so far as this record discloses, up to the time of trial. After the conveyance in 1910, Henry Williams went into possession of the land by tenant, who paid rent to him until he was killed in 1912. After his death, for the first time Carrie Anderson asked the tenant to pay rent to her.

After Williams' death, I. E. Harmon and his son, Zach Harmon, approached Carrie Anderson to buy the place. She executed a deed to them, which was not signed by her husband, Wister Anderson, and they went into possession. Later she executed another deed to I. E. Harmon, in which her husband joined. Harmon went into possession of the land in 1912 or 1913, without paying the purchase price agreed upon or any part of it. After default judgment was entered in favor of Harmon in 1918, he paid Carrie Anderson the purchase price.

This is all the evidence pointed out by the plaintiffs, or which we can find after a careful reading of all the testimony, tending to sustain the allegation of fraud. It is not convincing. Especially it is not convincing when considered in connection with other circumstances connected with the case. Plaintiffs I. E. Harmon and his son, Zach Harmon, lived near the land and knew that

it was being occupied by a tenant of Henry Williams. After his death they induced Carrie Anderson to execute the deeds to them without payment of the agreed purchase price, and not until after a default judgment had been entered in favor of Harmon was the purchase price paid. The evidence shows that after Carrie Anderson had executed her deed to Harmon, he went to considerable trouble and expense to get another deed signed by both Carrie Anderson and her husband, Wister Anderson. Plaintiff's evidence was largely devoted to showing that the deeds from Carrie Anderson to Henry Williams, and filed of record, were not signed by Wister Anderson, the husband. It is evident, upon considering the whole case, that the plaintiff considered the signature of Wister Anderson essential to a conveyance of the land, but no law is called to our attention which places any restriction upon the right of a married woman to convey her separate property, other than the homestead, independent of her husband.

The evidence is conclusive that the land in question was never at any time the homestead of Carrie Anderson and her husband, Wister Anderson. Wister Anderson never lived in Carter county or within the territory now composing Carter county. They were married in 1905 or 1906, and during the time they lived together as husband and wife, they lived on the allotment of Wister Anderson. They were not living together as husband and wife at the time these several deeds were executed.

"Canceling an executed contract is an exercise of the most extraordinary power of a court of equity. The power ought not to be exercised except in a clear case, and never for an alleged fraud unless the fraud be made clearly to appear; never for alleged false representations unless their falsity is certainly proved." Atlantic Delaine Co. v. James, 94 U. S. 207, 24 L. Ed. 112.

"We take the general doctrine to be that when in a court of equity it is proposed to set aside, to annul, or to correct a written instrument, for fraud or mistake in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal and convincing, and that it can not be done upon a bare preponderance of evidence which leaves the issue in doubt." United States v. Maxwell Land Grant Co., 121 U. S. 325-381, 30 L. Ed. 949-959.

"A mere preponderance of evidence, which at the same time is vague and ambiguous, is not sufficient to warrant a finding of fraud and will not sustain a judgment based on such

finding." Adams v. Porter, 58 Okla. 225, 158 Pac. 899.

"In cases where fraud is alleged in the procuring of the execution of written instruments or deeds, the proof must sustain the allegation by a preponderance of the evidence so great as to overcome all opposing evidence, and to repel opposing presumption. It should be of such weight and exigency as to satisfactorily establish the wrongful conduct charged; honesty and fair dealing as a rule being presumed." Moore v. Adams, 26 Okla. 48, 108 Pac. 392.

We think the evidence was wholly insufficient to prove that the execution of the deed by Carrie Anderson to Henry Williams was induced by fraud or misrepresentation. The signature of Wister Anderson was not essential to the conveyance, as it was not, and never had been, the homestead of the family.

The judgment is reversed, with directions to grant defendant a new trial.

By the Court: It is so ordered.

Note.—See under (1) 30 C. J. p. 932 § .643; 13 R. C. L. p. 1333; 3 R. C. L. Supp. p. 139. (2) 18 C. J. p. 448 § 554.