## BASS FURN. & CARPET CO. v. FINLEY.

No. 17110.   Opinion Filed Sept. 13, 1927.

Rehearing Denied Jan. 17, 1928.

(Syllabus.)

1. Contracts—Written Instrument Binding on Party Deliberately Signing.

The rule is well established in this state that in the absence of any evidence of incapacity to read, or any trick or artifice resorted to to prevent his reading it, a party signing a written instrument that is plain and unequivocal in its terms is bound thereby, and because he failed to make use of the faculties possessed by him for determining its express provisions will not be heard to say that the amount agreed to be paid thereunder should be another and different amount.

2. Same—Cancellation for Fraud—Burden of Proof.

In order to cancel a contract on the ground its execution was procured through fraud the elements constituting the fraud must be clearly pleaded and proved, and the burden of proving fraud is on the party seeking to cancel or avoid the contract.

3. Appeal and Error—Reversal—Verdict Unsupported by Evidence.

Where it clearly appears from an examination of the whole record that there is no competent evidence even reasonably tending to support the verdict of the jury, and it is apparent from the record that the motion for an instructed verdict should have been sustained, this court will reverse the cause and render judgment.

4. Same.

Record examined, and held, wholly insufficient to support the verdict of the jury.

Error from District Court, Oklahoma County; William H. Zwick, Judge.

Action by the Bass Furniture & Carpet Company against R. E. L. Finley. Judgment for defendant, and plaintiff brings error. Reversed and rendered.

Walter E. Latimer, for plaintiff in error.

T. G. Chambers, Jr., for defendant in error.

HUNT, J. Plaintiff in error was plaintiff below and prosecutes this appeal from a judgment rendered against it in the district court of Oklahoma county on the verdict of the jury in an action wherein plaintiff sought judgment against the defendant in the sum of $605.20, attorney's fees and costs, on a note and mortgage executed by defendant to it, representing balance due on certain furniture purchased by defendant from plaintiff. The admitted facts are that in the summer of 1922, defendant purchased from plaintiff a bill of furniture for his home in Oklahoma City amounting in the aggregate to $6,173.20, and same was charged to defendant on open account. The first payment made by defendant was in the sum of $1,500 on August 8, 1922, and numerous payments were made during the year 1923, so that on March 7, 1924, there remained a balance due on the books of the company of $1,005.20. The record discloses from the testimony of defendant that on or about this date he was behind with his payments, and the plaintiff company was demanding payment of the entire balance due; that he took the matter up with Mr. Randle of the plaintiff company, who told him that if he would sign the note and mortgage sued on herein, they would carry the account. It was agreed that the balance was to be paid at the rate of $200 per month. Two hundred dollars was paid in March and $200 in April, leaving a balance of $605.20, being the amount sued on herein. The record further discloses that plaintiff placed this account in the hands of its attorney for collection on or about February 28, 1924, and that he immediately notified defendant that he had said account in the sum of $1,005.20 for collection, and it was shortly thereafter that the defendant took the matter up with plaintiff and entered into the contract herein above referred to.

The record further discloses that on May 28, 1924, after defendant had defaulted in the May payment due under the contract, same was again placed in the hands of plaintiff's attorney, and defendant notified that suit would be filed on same if not paid by the 30th inst. No payment was made, and this action was instituted on June 5, 1924.

Defendant's contention, as disclosed by his answer, was that the execution of the note and mortgage sued on was procured by fraud on the part of plaintiff, and that same should therefore be canceled. The fraud alleged and upon which defendant relied was that at the time of the purchase of the furniture it was agreed orally by and between the parties that the defendant should have a discount of 20 per cent. on the list price of certain of said goods, and that at the time of signing said contract sued on herein some two years later, defendant specifically inquired of plaintiff as to whether he had been allowed the 20 per cent. discount formerly agreed upon, and that plaintiff fraudulently and wrongfully represented to him that he had been allowed said 20 per cent. discount and that the said sum of $1,005.20 represented the correct balance due and unpaid after allowing said discount. He further alleges that the representations were false and were known by the plaintiff to be false and were made for the purpose of misleading and defrauding the defendant and that same were believed and relied upon, and that he was misled and deceived thereby.

Defendant further contends that the discount to which he was entitled amounted to $507.32, and he tenders into court the sum of $97.88, representing the balance due after allowing said credit.

Plaintiff moved to strike the answer of defendant for the reason that same was not verified. The same was overruled, and plaintiff filed a demurrer to the answer on the ground that same failed to set forth any defense to the cause of action sued on. The demurrer was likewise overruled, and proper exceptions saved. Upon the trial of the case plaintiff moved for judgment on the pleadings, again urging the insufficiency of the answer, and this motion being overruled, plaintiff objected to the introduction of any evidence on the part of defendant. This objection was also overruled, and to each of these rulings proper exceptions were saved. At the conclusion of defendant's evidence plaintiff demurred to same and moved for an instructed verdict in favor of plaintiff, which said demurrer and motion were overruled, and plaintiff duly excepted. A trial was had to a jury, and a verdict returned in favor of defendant, on which judgment was duly entered as hereinbefore set out.

Plaintiff's petition in error contains some 18 assignments of error; the principal contention of plaintiff being that the answer of defendant was wholly insufficient to constitute a defense to plaintiff's cause of action, and that same should have been verified, and further, that the evidence of defendant was wholly insufficient to sustain the verdict of the jury. No authorities are cited by defendant in error in support of his contention herein, but defendant seems content with a general statement that it is unneces-

sary to cite authorities to the effect that a contract obtained through fraud should be set aside. This, of course, is true, but the fraud must be clearly and specifically pleaded and proved.

Let us see then, first, whether or not defendant's answer, if taken as true, is sufficient to constitute a defense to plaintiff's cause of action; and second, whether or not the evidence offered in support thereof is sufficient to sustain the verdict of the jury. It is well settled, of course, if there is any evidence reasonably tending to support the verdict of the jury, same will not be disturbed on appeal, and the converse of this proposition is likewise true. Since the sufficiency of the answer and of the evidence offered in support thereof is challenged, we think it well to set same out here in full:

"Comes now the defendant above named and for his answer to plaintiff's amended petition denies generally and specifically each and every allegation therein contained, excepting those hereinafter specifically admitted.

"For further answer, defendant alleges that said contract of note mortgage set up and relied upon in plaintiff's petition was executed by this defendant with the understanding and upon the representation of the plaintiff herein that said amount for which said contract was executed of $1,005.20 represented the unpaid balance for goods sold and delivered to this defendant. That at the time of the execution of said contract this defendant was not furnished with a statement of his account with said plaintiff, but relied wholly upon the representations that said amount of $1,005.20 was the correct statement and amount of the unpaid balance due for goods sold and delivered as aforesaid. That said representations made by said plaintiff as aforesaid were false and untrue and were made for the purpose of misleading this defendant and fraudulently procuring the execution of said contract and said representations and fraudulent statements were wholly relied upon by said defendant in the execution of said contract. That in truth and in fact at the time of the purchase of said goods as alleged in plaintiff's petition it was agreed orally by and between the parties that this defendant should have a 20 per cent. discount on the list price of certain of said goods, a correct list of said goods together with their listed price together with statement of the price at which they were sold to this defendant is hereto attached marked Exhibit 'A' and made a part of this answer.

"That at the time of signing said contract, as aforesaid, this defendant specifically inquired of said plaintiff as to whether said agreed price of 20 per cent. less than the listed price had been made him as to wheth-

er the balance due of $1,005.20, as represented to him as being the unpaid balance of said bill, constituted the balance due for said furniture at the price so agreed upon as aforesaid. That at said time plaintiff fraudulently and wrongfully misrepresented to this defendant that said price of 20 per cent. less than the list price had. been made him on the articles heretofore set out, and that the said $1,005.20 constituted the balance due and unpaid for said articles at such reduced price. That said representations were false and known to be false at the time they were made by said plaintiff, and were made with the purpose of misleading and defrauding this defendant and were believed and relied upon by this defendant in the execution of said written contract. That in truth and in fact the correct balance due and unpaid on said contract as aforesaid at the time of the execution of said note was $496.63. That there is now due and owing of said amount the sum of $97.88. That this defendant did not learn of the fraud perpetrated upon him until immediately before the bringing. of this suit at which time said defendant offered to pay said unpaid balance of $97.88, together with eight per cent. interest, which said offer was refused by said plaintiff. That said defendant stands ready and willing to pay said sum of $97.88, together with eight per cent. interest from the 7th day of March, 1924, and hereby makes tender of same to said plaintiff in open court.

"Wherefore, defendant prays that the court order said written contract set up and relied upon in plaintiff's petition and so fraudulently procured by said plaintiff as aforesaid be surrendered up and canceled, and that the costs herein be taxed against said plaintiff.

"T. G. Chambers, Jr.

"Attorney for Defendant."

Taking the answer in connection with defendant's brief and the record, it is obvious that fraud on the part of the agent of the plaintiff was the defense upon which defendant relied, the fraud being fraudulently representing the balance due.

Numerous authorities are cited by plaintiff in support of its contention that the answer is insufficient to constitute a defense to plaintiff's claim, and that the demurrer thereto should therefore have been sustained. It must be borne in mind this was an action on debt represented by a contract in the form of a note and. chattel mortgage executed by defendant some two years after the purchase of the property and after practically five-sixths of the purchase price had been paid and at a time when defendant had become delinquent in his payments, was threatened with suit, and was seeking more time as to the balance due. It does not appear from the answer that defendant could not read.

but is in evidence that defendant was a business man and at the time of the execution of the contract sued on was manager of one of the large office buildings in Oklahoma City. In the early case of McNinch v. Northwest Thresher Co., 23 Okla. 386, 100 Pac. 524, in a very able opinion by Chief Justice Kane, it was held:

"The execution of a contract in writing supersedes all the oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument, in the absence of accident, fraud, or mistake of fact; and any representations made prior to or contemporaneous with the execution of the written contract are inadmissible to contradict, change, or add to the terms plainly incorporated into and made a part of the written contract.

"If a party is induced to sign a contract by fraud, he can, of course, avoid it for that reason. It is, however, clear that merely falsely representing to a man in possession of his faculties and able to read that a writing embodies their verbal understanding is not the fraud the law means."

In our judgment this case is decisive of the question here involved, for it is clear from an examination of defendant's answer, above quoted, that the fraud relied upon was merely falsely representing that the writing embodied the former verbal understanding as to allowance of certain discounts and that the amount set forth therein was correct. No charge is made that any trick or artifice was resorted to to induce defendant to sign the instrument sued on or to prevent his reading it, nor is there any allegation of accident or mistake.

In the case of Guthrie & W. Ry. Co. v. Rhodes, 19 Okla. 21, 91 Pac. 1119, it was said:

"We take it the rule is well established that, in the absence of any evidence of incapacity to read, or any trick or artifice resorted to to prevent his reading it, a party signing a written instrument that is plain and unequivocal in its terms is bound by its express terms and conditions therein contained, and that he cannot set up his own carelessness and his own indolence as a defense, and, because he failed to make use of the faculties possessed by him for determining its conditions be heard to say that its terms or conditions should be other or different from what they are."

In Mower Harwood Creamery & Dairy Supply Co. v. Hill, 135 Iowa, 600, 113 N. W. 466, it is said:

"Where one who can read signs a contract without reading it or having it read to him, he is bound by it, although its provisions are different than he supposed."

To the same effect are Reed v. Coughran (S. D.) 111 N. W. 559; Grieve v. Grieve, 15 Wyo. 358, 89 Pac. 569, 9 L. R. A. (N. S.) 1211; Wood v. Wack, 31 Ind. App. 252, 67 N. E. 562.

In Farlow v. Chambers (S. D.) 110 N. W. 94, Presiding Judge Fuller uses the following language:

"In Magee v. Verity, 97 Mo. App. 486, 71 S. W. 472, a decree in equity canceling a note and trust deed for the reasons here urged was reversed on appeal, and, in the course of the opinion, the court said: 'Plaintiff cannot be allowed to show that the written paper signed by him does not contain the contract. If a party is induced to sign a contract by fraud, he can, of course, avoid it for that reason. It is, however, clear that merely falsely representing to a man in possession of his faculties and able to read that a writing embodies their verbal understanding is not the fraud the law means.' From the case of Bostwick v. Mutual Life Insurance Co., 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, 67 L. R. A. 705, we quote: 'It does not militate, as counsel for respondent seem to think, against the maxim that a person cannot take advantage of his own wrong, but enforces that other one, which is quite as well established, that the court will not constitute itself the guardian of persons of mature age and ordinary intelligence, protecting them against the result of their own negligence; that it will not furnish a person a remedy for a wrong where he cannot prove a legal claim for damages without showing that his own negligence intervened between the act of the alleged wrongdoer and the result complained of, was the real, efficient, producing cause of his injury; that in such a case it will be conclusively presumed that he voluntarily accepted the situation, because, if he had used ordinary care, the injury complained of would have been prevented.'"

In the very first paragraph of the contract appears these words, "shown in figures below in this contract," and the itemized list showing the articles of merchandise purchased and amount of charges and credits is referred to in the body of the contract as being attached and made a part thereof, and, as stated in the case last above cited, defendant by the exercise of ordinary care could have very easily ascertained whether or not he was being allowed the credits to which he considered himself entitled and thus prevented the injury complained of. It is true he testified the list was not attached to the writing when he signed it, but that was likewise easily ascertainable, and since

same is referred to in four separate and distinct places in the contract, and is specifically made a part thereof, it was error to admit such testimony, since it was a clear attempt to vary the terms of a written instrument by parol testimony.

In Mullen v. Beach Grove Park, 64 Ind. 202, it was held:

"An answer admitting the execution of the subscription sued upon, but alleging that the person procuring his signature had misrepresented the contents of the subscription and the extent of liability the defendant would incur by signing it, is insufficient."

And we think this is peculiarly true where the evidence fails to show that the party is incapable of reading it, and where it clearly appears that he had full and ample opportunities to investigate and determine its contents if he had so desired.

In Ames v. Milam, 53 Okla. 739, 157 Pac. 941, this court held:

"One is not relieved from a written contract by reason of having signed it in ignorance of its contents, unless his signature was procured by fraud or mistake.

"Merely representing, to a man in possession of his faculties and able to read, that a writing embodies a previous verbal understanding, is not such fraud as will avoid the instrument."

It was said in that case that the fact that defendant was too busy to read the contract did not relieve him of his duty to apprise himself of its contents, which is equally true here.

Chancellor Kent, in volume 2, p. 5, has well said:

"The common law affords to every one reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly or an indifference to the ordinary and accessible means of information."

It would seem, therefore, plaintiff's motion for judgment on the pleadings could have very properly been sustained, because it clearly appears, even conceding the facts alleged in the answer to be true, that the fraud, if any, occurred because of his own neglect and lack of ordinary care in not availing himself of the means at his command to determine whether the amount he admits he signed the note for was correct or not. However, since we have the evidence before us, we will briefly review the same in connection with the answer and the law applicable as shown by the authorities above cited. The only evidence offered on behalf of defendant was that of defendant himself, and we quote at length from that portion relative to the execution of the instrument sued upon.

"Q. Did you have statements rendered you as to the balance you owed—that is, what you owed for the whole bill? A. Yes, I think they sent balances each month. Just a slip—just said 'balance.' Q. How much did you owe them? What did you pay down? A. Fifteen hundred dollars, I think. I don't remember exactly. Q. Then you made payments from then on? A. Yes. Q. What was the occasion—just explain to the jury what was the occasion—did you later on receive—I hand you plaintiff's Exhibit 'A' and ask you whether or not you recognize that as a paper which you signed? A. I recognize the top part of it, but not this part down here. Q. What were the circumstances under which that was signed? A. Well, I had got behind on my payments and I was wanting to pay them. I was wanting to take care of—never had been sued for a bill, so I went down to Mr. Randle's office and told him I couldn't pay all that; they were demanding the entire balance. Told him I just didn't have it, and I wanted to do the right thing about this and pay. He asked me would I sign that—they would go ahead and carry it for me. So I signed it; just a form of note; there was a yellow copy. Q. Did you see a description on the bottom part? A. This wasn't in there. Q. You understood that was to be put on there, didn't you? A. Wasn't anything said about it. Q. You understood it was a mortgage—you understood there was to be a description furnished on it. A. Yes, but there was some furniture— Q. Anything said at that time with reference to the correctness of the balance, or how much you were going to sign that for? A. No. I just supposed they had kept things straight and their books straight. I figured on checking it up at the end. I didn't think there would be any question. Q. You say to Mr. Randle, then, whether or not that was the correct balance? A. There were several items in it was to be credited. There was some furniture Mrs. Peck had given my wife when they broke up housekeeping, and she sent it down there to have it sold. I asked Mr. Randle if the discounts were on there, and if a credit for that furniture was on there. He said everything is like it was agreed upon. Q. That's what he said when you signed it? A. Yes. Q. Did you know at the time you signed it they had not allowed you the 20 per cent.? A. No, sir. Q. Did you rely upon what Mr. Randle told you when you signed it? A. Yes."

This is all the evidence offered by defendant as to what transpired at the time of the execution of the contract. It will be seen that at that time defendant did not claim to Mr. Randle that he was entitled to 20 per

cent. discount according to a previous agreement or any other specific amount, but merely asked Mr. Randle "if the discounts were on there and if a credit for that furniture was on there." An examination of the statement shows there was some three or four items on which was credited a discount and also a credit for some furniture. So it cannot be said there was any fraud on Mr. Randle's part when he answered, "Everything is like it was agreed upon," especially in view of defendant's further testimony as follows:

"Q. You say Mr. West and the manager of the drapery department and Mr. Randle and Mr. Johnson agreed to give you that discount? A. No. The manager of the drapery department told me I couldn't have any discount on rugs and draperies. He didn't have anything to do with that. Mr. West was manager of the furniture department and told me I could have my discount on my furniture. I never talked to Mr. Johnson or Mr. Randle either one about a discount until they got up this final statement. Q. You got this statement? A. I don't know the gentleman; he was connected with the store. Q. You got this statement June 5. 1924? A. Yes. Q. That's when it was given to you? A. Yes."

—from which it will readily appear that Mr. Randle had never agreed upon any 20 per cent. discount, and, so far as defendant knew, had no knowledge of any such agreement. Further, defendant testified as follows:

"You claim a 20 per cent. discount? A. Yes. Q. You say the agreement to give you that was made with Mr. Johnson and Mr. Randle? A. No, sir. Q. Who? A. Mr. West. Q. Did I misunderstand you when I understood you a minute ago to say that you talked to Mr. Johnson and Mr. Randle about it also? A. No, sir; I did not talk to them. Q. They made no agreement about discounts? A. No, sir. Mr. West was in charge of the furniture department and sold me the bill of goods, and I never took it up with anybody else at all."

It is well settled that in order to cancel an instrument because of fraud in its procurement, as defendant seeks to do here, the fraud must be specifically pleaded and proved. and the burden is on the party alleging same to establish it by competent evidence, clear and convincing.

In Brown v. Harmon. 115 Okla. 277, 242 Pac. 1047, in a suit to set aside a deed upon the ground its execution was secured by fraud, this court held:

"Where fraud is alleged in procuring the execution of a deed, the proof, to sustain the allegation, must be of such weight as to satisfactorily establish the wrongful conduct charged; honesty and fair dealing as a rule being presumed. A mere preponderance of evidence * * * is not sufficient to warrant a finding of fraud, and will not sustain a judgment on such finding."

This rule applies with equal force in the instant case, for the defendant seeks to cancel the contract sued on because obtained through fraud. See, also, Adams v. Porter, 58 Okla. 225, 158 Pac. 899; Moore v. Adams, 26 Okla. 48, 108 Pac. 392.

We are reluctant to set aside the verdict of a jury, and would not do so were we not firmly convinced after a careful examination of the entire record that there is no evidence even reasonably tending to support the verdict rendered herein. We might add it appears to us the jury must have been led astray by a lot of incompetent and irrelevant testimony introduced in this case, most of it without objection, and based its verdict on the proposition that this defendant had been promised a 20 per cent. discount by one of the salesmen with whom he dealt rather than on the real issue in the case, to wit, the alleged fraud in the representation made as to the balance due when the contract herein sued on was executed. Be that as it may, we are forced to the conclusion that p'aintiff's motion for an instructed verdict, under both the law and the facts, should have been sustained. and this cause is therefore reversed, and judgment is rendered for plaintiff for the amount sued for. to wit, $605.20, with six per cent. interest thereon from June 5, 1924, and the further sum of $75.20 attorney fees, as provided for in said contract, and costs, and the personal property covered by the chattel mortgage sued on herein is ordered sold in the manner provided by law to satisfy the judgment herein rendered.

BRANSON, C. J., MASON, V. C. J., and PHELPS, LESTER, and CLARK, JJ., concur.

Note.—See under (1) 13 C. J. p. 370, §249; 6 R. C. L. p. 624; 4 R. C. L. Supp. p. 430: 5 R. C. L. Supp. p. 359; 6 R. C. L. Supp. p. 401. (2) 9 C. J. p. 1232, §147; p. 1233. §148: p. 1252. §189; pp.1254. 1255, §195. (3) 4 C. J. p. 856, §2835. (4) 9 C. J. p. 1256, §195.