Frank SOUTHARD and Bernice Little, Plaintiffs in Error,

v.

D. S. MacDONALD, Jr., Defendant in Error, No. 38889.

Supreme Court of Oklahoma.

March 28, 1961.

James W. Batchelor, Melvin H. Landers, Durant, for plaintiffs in error.

W. L. Steger, R. T. Stinson, Durant, on the brief. Hicks Epton, of Horsley, Epton & Culp, Wewoka, for defendant in error.

HALLEY, Justice.

This was an action by Cynthia Ann Trammell, Robert Lee Southard and Flora

Marshall against Frank Southard, Myrtle Carpenter, Bernice Little and D. S. MacDonald, Jr., to partition 420 acres of land.

The record shows that all the parties above named, except D. S. MacDonald, Jr., were the six children of P. M. Southard and wife, Mary Rosetta Southard, who originally owned the land involved and who had executed a joint will. January 18, 1953, P. M. Southard had died and the joint will of P. M. Southard and his surviving wife, was admitted to probate in the County Court of Bryan County, which will provided that the surviving wife, Mary Rosetta Southard, had a life estate in the land involved, with remainder to their six children, above named, in equal shares of ⅙th each. Mary Rosetta Southard died November 15, 1957, when her life estate in the land was extinguished.

Two of the six children of P. M. Southard, deceased and his wife who died in 1957, to-wit: Frank Southard and his sister Bernice Little, filed a cross-petition in the partition suit against D. S. MacDonald, Jr., in which they alleged that shortly after the death of their father P. M. Southard, they consulted with D. S. MacDonald, Jr., an attorney, to represent them with reference to breaking the will of their father so that they might receive their share of the land without it being subject to the life estate of their surviving mother.

The two children who filed the cross-petition will be referred to as plaintiffs and MacDonald as defendant, or by name.

Plaintiffs alleged that when they employed MacDonald he assured them that he could break the will of their father, and asked them to sign a contingent fee contract of 30 per cent of all properties recovered for them, if he broke the will, or nothing if he failed to break the will; that he also asked them to sign another instrument which they were led to believe authorized him to have a guardian appointed for their mother, but which was in fact a warranty deed conveying to him 40 per cent of the value of all property recovered for them.

Plaintiffs further alleged that MacDonald had been guilty of fraud in obtaining the contingent fee contract for 40 per cent of what he recovered, instead of the 30 per cent they agreed upon and that he had deceived them in all the transactions had with him; that shortly after the distribution of their father's estate their mother had given to each of her six children a check for $2,000, 40 per cent of which was retained by MacDonald, who had further defrauded them by agreeing that all of the personal property of their father, including some $25,000 in a joint bank account, should all pass to their mother with no part thereof to the children.

Plaintiffs alleged that the attorney's contract between them and MacDonald is a nullity because procured by fraud and deceit, not properly acknowledged, not delivered and never became a binding contract between the parties thereto, and that there has been a complete failure of consideration therefor, and it should be cancelled, because MacDonald was unsuccessful in breaking the will, accepted $1,600 in excess of the value of his services, and that MacDonald induced them to sign a paper so he could start a guardianship proceeding, and such paper turned out to be a warranty deed to MacDonald, which MacDonald had had recorded and casts a cloud to their title to a ⅙th interest in their land.

Plaintiffs alleged that they were uneducated with very little business experience, while MacDonald is a practicing attorney. They prayed that the contingent fee contract between them and MacDonald be cancelled and that the warranty deed by them to MacDonald be cancelled, and that MacDonald be adjudged to have no further claim against them or against any property or funds from the estate of their deceased father and mother and that MacDonald be forever enjoined from asserting any claim against the land involved adverse to plaintiffs, and that the court determine and fix a reasonable attorney's fee for services rendered and to refund to plaintiffs all sums in excess of a fee determined by the court on a quantum meruit basis.

The above cross-petition was filed April 27, 1959, and MacDonald voluntarily entered his appearance without service of process and joined plaintiffs' request for a partition. On May 15, 1959, he filed an answer to the cross-petition of Frank Southard and Bernice Little, which consisted of a general denial and a specific denial of fraud or deceit. He admitted that on February 5, 1953, he and plaintiffs entered into a written contract of employment, and plead estoppel, laches and the statutes of limitation, and prayed that the court find him not guilty of deceit, fraud or other action which is improper according to the standards of the legal profession. He prayed that he have judgment confirming the contract of employment by plaintiffs and ratifying the warranty deed executed by plaintiffs to MacDonald dated February 17, 1954.

The trial court refused a motion for a jury trial and rendered judgment for D. S. MacDonald, Jr., upon the cross-petition of Frank Southard and Bernice Little and ordered a partition as prayed for in the original petition as to the other parties, none of whom are interested in the issues involved in the cross-petition of Frank Southard and Bernice Little, who have appealed from the judgment in favor of D. S. MacDonald, Jr., on their cross-petition.

The oral and documentary evidence is rather voluminous and much of the oral testimony is conflicting.

Plaintiffs first contend that the court erred in not allowing them a jury trial. They rely upon Section 556, 12 O.S.1951, which is as follows:

"Issues of fact arising in actions for * * * recovery of money, or of specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or a reference * * * ordered, as hereinafter provided."

We find that the cases cited by the plaintiffs are different from the case here involved, because the primary issue in the cases cited was the recovery of specific real and personal property.

It must be kept in mind that whatever MacDonald did or got was under the contingent fee contract of employment. Until and unless this contract was cancelled the court could not reach the issue of the warranty deed executed to him by plaintiffs and the payment of a fee on partial distribution of the estate of P. M. Southard.

Here the plaintiffs did not sue in ejectment for the recovery of specific real property. In Liles v. Bigpond, 190 Okl. 112, 121 P.2d 596, 598, this Court considered some of the cases cited by plaintiffs, and said in part:

"* * * The cases thus cited, as has been pointed out in Allen v. Jones, 188 Okl. 546, 110 P.2d 911, are authority for the rule that trial by jury is a matter of right where the gravamen of the action is to establish title and right to possession of specific real estate but have no application in cases where the action is one which was formerly cognizable solely in equity and in which the gravamen of the action is to establish the right to rescission, cancellation or other purely equitable remedy. In the case at bar the plaintiff was seeking to rescind the contract and to cancel the deed. The gravamen of her action was to establish the right to such rescission and cancellation and all other matters requested in the prayer were merely incidental thereto. As said in the case of Travis v. McCully, 186 Okl. 378, 98 P.2d 595, 596: 'An action to cancel a deed is of equitable cognizance, and no party thereto is entitled to a jury trial.' See, also, Harris v. Davis, 170 Okl. 35, 38 P.2d 562."

Are plaintiffs entitled to a jury trial because they sought to recover money from MacDonald? In Howard v. Stanolind Oil & Gas Co., 197 Okl. 269, 169 P.2d 737, 741, we said:

"It is well settled that an action, the primary purpose of which is to set aside deed conveying real estate and obtaining a decree re-investing title

in plaintiff, is one of equity and in such action neither party is entitled to a jury. Stow v. Bruce, 178 Okl. 127, 61 P.2d 1043."

Again in paragraph 1 of the syllabus in Ward v. Lindly, Okl., 294 P.2d 296, we said:

"In action by grantor's heir to cancel deed, because of grantor's incapacity, and for possession of the premises, neither party was entitled to jury trial on theory that cause of action was primarily one for possession of the land, since heir was not in a position to bring action for possession until deed was canceled and the action was one of equitable cognizance."

■ Since it is clear that the prime and necessary purpose of plaintiffs' action was based upon the cancellation of the contingent fee contract and deed, alleged to have been secured by fraud and deceit, a purely equitable action, we find no merit in the contention that it was error to deny plaintiffs a jury trial.

Plaintiffs also contend that the contingent fee contract with MacDonald is void not only because obtained by fraud, but also because of Title 5, Section 7, O.S. Supp.1959, which provides as follows:

"It shall be lawful for an attorney to contract for a percentage or portion of the proceeds of a client's cause of action or claim not to exceed fifty (50%) per centum of the net amount of such judgment as may be recovered, or such compromise as may be made, whether the same arises ex contractu or ex delicto, and no compromise or settlement entered into by a client without such attorney's consent shall affect or abrogate the lien provided for in this chapter. * * *"

■ Do the statutory provisions above quoted prohibit a contingent fee contract between attorney and client in a probate proceeding? While the statute does appear to limit contingent fee contracts to two classes of cases, i. e. those arising ex contractu and ex delicto, we cannot agree with plaintiffs' contention that such contracts are void because the cause of action here involves a probate proceeding.

We do not find a single opinion by this Court in which it was determined that a contingent fee contract was held to be void because not arising ex contractu or ex delicto. It is our opinion that the primary purpose of Section 7, Title 5, supra, was to limit the contingent fee contract to 50% of the recovery by the attorney under the contract. That statute has been in effect since 1910.

In Emery et al. v. Goff, 198 Okl. 534, 180 P.2d 175, 171 A.L.R. 457, there was before this Court a case where the guardian of a minor had made a contingent fee contract, and the question of the authority of the guardian was fully discussed but the question of the authority to make contingent fee contract in a probate proceeding does not appear to have been raised, but such right was fully recognized. Numerous cases were cited in the opinion wherein such contracts were discussed but never questioned as to their validity.

In Haunstein v. McCalister, 172 Okl. 613, 46 P.2d 552, we approved a judgment wherein a fee was increased after the original contract of employment. The evidence in the case at bar does not show overreaching on the part of the defendant. The fee fixed was in conformity with charges usually made in such cases. We held in Tillman v. Gazaway, 128 Okl. 183, 261 P. 935, that before an attorney enters on business of a prospective client a contract between them stands on the same footing as any other contract between competent persons.

■ Plaintiffs contend that the judgment appealed from is contrary to the clear weight of the evidence. They cite Rees v. Briscoe, Okl., 315 P.2d 758, 759, where it is said in the fourth paragraph of the syllabus as follows:

"In an action of equitable cognizance this Court will examine the whole record and weigh the evidence, and will reverse the judgment of the trial

court if * * * found against the clear weight of the evidence or is contrary to established principles of equity."

We have found that this is an action in equity. The oral evidence is very contradictory, both as to the execution of the contingent fee contract and the warranty deed whereby plaintiffs conveyed to their attorney, MacDonald, 40 per cent of the land distributed to them under the joint will of their mother and father, and after the death of their father.

■ After a complete study of all the evidence and having weighed the same, we find that the contingent fee contract between the parties is valid and that the warranty deed whereby plaintiffs conveyed to their attorney 40 per cent of the land inherited under the conjoint will of their father and mother was binding and free from fraud. The trial court's findings are not against the clear weight of the evidence but are sustained thereby and he was fully justified in making the findings he did.

We find no merit in the claim that services of their attorney were worthless to the plaintiffs. They testified that he had them believe that he could and would break the will of their father and mother; that he concealed from them the things they were entitled to know. The defendant denied their testimony positively.

It is not disputed that the will of P. M. Southard and his wife left some doubts as to whether there was a right of survivorship after his death. The question was, could his wife dispose of the real property if she desired to do so, or must she hold it to be distributed between their six children upon the death of the survivor?

An experienced attorney had drawn the will and prepared an order of distribution which would have permitted the surviving wife to dispose of the real estate during her life. If MacDonald had broken the will plaintiffs would have taken ⅛th of the fee subject to the widow's homestead

right instead of ⅙th interest in the remainder. ·

It is not disputed that their attorney conferred with the attorney for the estate and secured his consent to rewrite the last two pages of the final order of distribution and that the surviving wife could not dispose of the real estate, but must leave it all to the six children of P. M. Southard and his wife.

■ We find no merit in the contention that the trial court should have shifted the burden of proof to the defendant. It is admitted that plaintiffs had the burden of proving fraud, deceit or misrepresentation at the outset, but it is contended that it should have been placed on the attorney after plaintiffs had made a strong case against him. The defendant's testimony and that of the notary public who took the acknowledgment to the deed in question from plaintiffs satisfactorily refuted plaintiffs' testimony.

■ Is the judgment of the trial court contrary to law? The plaintiffs testified that they never acknowledged the contract of employment with the defendant nor the deed whereby they conveyed to him 40 per cent of the land recovered for them. The notary testified that she took their acknowledgments in regular form, as they appeared when introduced at the trial. In Winn v. Willmott, 138 Okl. 177, 280 P. 808, it was held that:

> "Where a deed of conveyance is regular on its face, and bears the signature of the grantors and the regular certificate of acknowledgment signed and sealed by a notary public of this state, it imports verity, and impeachment thereof on the ground of forgery can be sustained only by clear, unequivocal, and convincing testimony."

A careful survey of the evidence convinces us beyond doubt that the attorney involved used good judgment in handling the matters involved for the plaintiffs under all the facts and circumstances.

Since we hold that the deed and contract are binding, there is no necessity to dis-

cuss the value of the service on quantum meruit basis. The trial court had the advantage of observing the witnesses as they testified, and could well judge their ability to recall the facts involved and their intention to testify the truth.

The judgment of the trial court is affirmed.