85 P.3d 824 (2004)
2004 OK 6
STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
Robert S. FLANIKEN, Respondent.
No. SCBD 4722.
Supreme Court of Oklahoma.
February 3, 2004.
*825 Allen J. Welch, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.
Michael H. Brady, Ronald A. Schaulat, Brady, Schaulat & Falsetti, Oklahoma City, OK, for the Respondent.
WINCHESTER, J.:
¶ 1 The Complainant alleges that the Respondent, Robert S. Flaniken charged an unreasonable fee to a client, Peggy Hepler. A hearing was held before the Trial Panel of the Professional Responsibility Tribunal (PRT) on April 24, 2003. In their report of May 21, 2003, the PRT concluded the OBA failed to meet its burden of proof in the matter. We agree.

Background Information
¶ 2 Peggy Hepler was named personal representative and sole beneficiary in the Last Will and Testament of Dewey Lawrence Hughes. When the will was executed, Hughes was blind and infirm and living in a nursing home. Several times in the years preceding his death, he was a client of the Adult Protective Services Division of the Department of Human Services under complaints of exploitation. Hughes died unmarried, without any surviving children or grandchildren. His heirs at law were nieces and nephews residing in other states. Following his death, one nephew and the nephew's mother expressed concern about the propriety of the will, Hughes' competence and Hepler's inheritance. Hepler was not a relative of Hughes. She met him at the bank where she was employed and he was a customer.
¶ 3 The attorney who drafted Hughes' will was convinced through his observations that Hughes was competent. Hepler met with the Respondent concerning legal representation in the probate. Hepler rejected Respondent's proposal of an hourly rate fee with a retainer. The circumstances of Hughes' will and Hepler's inheritance were unique and peculiar and Respondent reasonably believed a will contest was inevitable and imminent. Shortly following the initial discussions and the rejection by Hepler of Respondent's proffered retainer and hourly fee, Respondent and Hepler entered into a contingency fee agreement. The parties stipulate that the Respondent's representations in entering into the fee agreement did not involve any fraud, misrepresentation or concealment.
*826 ¶ 4 After Hepler agreed to the fee, Respondent filed the will probate case, handled the necessary matters including negotiations with creditors and concluded the estate administration and distribution. The will was not contested. With the final estate accounting and distribution order, Respondent and Hepler sought and received court approval for separate fees for Respondent's services to the Personal Representative.
¶ 5 After the order was entered to distribute the remaining liquid assets to Hepler, Respondent received the amount of his one-third contingency fee agreement. After subtracting the court-awarded fee from estate assets, Hepler paid the Respondent $108,199.85. The total value of the real and personal property she inherited was $451,413.54. The Respondent maintains an attorney lien claim against the unliquidated real property.
¶ 6 The trial panel concluded that the Respondent's conduct did not merit discipline, and made such a recommendation to this Court. The trial panel's recommendations are entitled to great weight, but are merely advisory in nature. In attorney disciplinary matters, this Court does not sit in review of the panel's recommendations, but instead exercises original jurisdiction. Matter of Page, 1993 OK 165, ¶ 3, 866 P.2d 1207, 1209.

Tests for Reasonableness of Fees
¶ 7 In their Joint Stipulated Case Presentation, the parties agree to two tests for judging the reasonableness of fees. The first test involves the fee setting stage when the attorney and client initially agree to a fee arrangement. If during this fee setting stage, the contingency fee agreement was based on fraud, mistake, undue influence, or suppression of facts, or is contrary to public policy, then the attorney has secured an unwarranted premium for a risk that did not realistically exist. This test is apparently taken from a footnote in Oklahoma Turnpike Authority v. New Life Pentecostal Church of Jenks, 1994 OK 9, ¶ 13, n. 17, 870 P.2d 762, 766, n. 17. The second test is based on outcome analysis. This test is codified in 5 O.S.2001, § 7, and limits an attorney in a contract for a percentage of a client's cause of action or claim to no more than 50 percent of the client's net recovery, whether by judgment or compromise.
¶ 8 Although the Bar agrees that the contingency fee passes these two tests, it nevertheless asserts the fee was both excessive and unreasonable, and therefore a violation of Rule 1.5(a), ORPC. The OBA submits that "reasonableness" is a legal concept always subject to judicial scrutiny and evaluated on a case-by-case basis. The Bar offers that fee reasonableness can be determined by a third test: upon reflection. This means that a fee should also be judged in hindsight as to whether it is reasonable in accordance with the eight factors listed in Rule 1.5(a).[1] The OBA interprets the factors set out in Rule 1.5(a) in light of the outcome and conclusion that no formal will contest materialized. The Bar concludes that the Respondent cannot justify his fee in accordance with the reasonable standards set out above, regardless of the level of risk he undertook at the time of contracting. But the Respondent argues that this position misinterprets the application of Rule 1.5(a) by creating an additional test not found or articulated in Oklahoma law. He notes that factor 8 in Rule 1.5(a) addresses whether the fee is fixed or contingenta clear indication that contingency fees cannot be weighed upon factors of time, novelty or expertise.

*827 Attorney Discipline for an Unreasonable Fee
¶ 9 We must observe that we are not deciding a fee dispute. We express no opinion concerning how a district court should resolve a dispute between a client and attorney over the fee contract. Before us is an attorney discipline matter. The Rules Governing Disciplinary Proceedings require that charges be established by clear and convincing evidence.[2] 5 O.S.2001, ch. 1, app. 1-A, Rule 6.12(c), State ex rel. Oklahoma Bar Ass'n v. Eakin, 1995 OK 106, ¶ 16, 914 P.2d 644, 650. The burden of proof in a contract dispute is preponderance of the evidence.[3]Tibbets & Pleasant v. Martin, 1925 OK 142, ¶ 5, 233 P. 698, 699.
¶ 10 Contingent fee contracts have a long history of acceptance in this country. Such contracts may be the only way some litigants can secure legal services. But the right to contract for a contingent fee has never been thought to be unrestrained. Abel v. Tisdale, 1980 OK 161, ¶ 16, 619 P.2d 608, 611. For example, this Court has held that the trial court may consider factors other than the provisions of a contingent fee contract when it is executed by a parent on behalf of a minor. Sneed v. Sneed, 1984 OK 22, 681 P.2d 754.
¶ 11 The eight factors listed in Rule 1.5(a), are analogous to the factors listed in State ex rel. Burk v. City of Oklahoma City, 1979 OK 115, 598 P.2d 659, where courts were instructed on the method for awarding attorney fees at the conclusion of a case and against an opponent. That case involved setting criteria for a reasonable attorney's fee in the absence of a contract or statute fixing the amount. Oliver's Sports Center, Inc. v. National Standard Ins. Co., 1980 OK 120, ¶ 7, 615 P.2d 291, 294. The Oliver's Sports Center case also involved setting a fee against an opponent. Those cases are not particularly helpful in deciding the reasonableness of a fee contract voluntarily entered into between an attorney and client.
¶ 12 In considering the facts before this Court in this bar matter, we hold that the Complainant has failed to meet its burden of proving by clear and convincing evidence that the Respondent has charged an unreasonable fee pursuant to Rule 1.5(a). The Respondent gave the client a choice between an hourly fee and a contingent fee. No evidence has been presented that shows impropriety involved in the execution of the contract between the Respondent and Hepler. The evidence shows that when the probate took less time and did not involve the anticipated will contest, the client became dissatisfied with the bargain she had made. Whether she has legal grounds to amend the contract in a civil action is not before this Court. We reject the proposed "hindsight" test of the Bar Association where a lawyer has lawfully contracted for a percentage of a client's recovery, and reject the Complainant's recommendation of discipline for the Respondent.
COMPLAINT DISMISSED ON THE MERITS.
CONCUR: WATT, C.J., OPALA, V.C.J., LAVENDER, HARGRAVE, WINCHESTER, EDMONDSON, JJ.
CONCURS IN PART; DISSENTS IN PART: HODGES, J.
DISSENT: KAUGER (joins BOUDREAU, J.), BOUDREAU, JJ.
OPALA, V.C.J., concurring.
¶ 1 I concur in the court's pronouncement but write separately to emphasize a line of demarcation between those lawyer-fee disputes that may constitute a breach of professional discipline and those that present no more than a civil contest. Although the Oklahoma Rules of Professional Conduct[1] *828 are designed to generate fairness in lawyer/client relations, a fee dispute is not a ground for imposition of professional discipline absent some proof of at least one element of culpability associated with the fee's exaction. Recognized elements of disciplinary taint include: a facially egregious or unreasonable amount, the fee's extortionate origin, deceit, illegality, concealment, unconscionability and fraud.[2] The provisions of Rule 1.5(a)(1-8), Rules of Professional Conduct,[3] create an elastic standard (with a non-exhaustive list of factors) for assessing the reasonableness of a fee amount.[4]
¶ 2 The contingency fee agreement here in contest, which was entered into upon Mrs. Hepler's informed acquiescence, does not without more present a ground for the Bar's assertion of disciplinary cognizance. At the moment of its formation the agreement was neither invalid nor facially tainted by some element of ethical infirmity.[5] Moreover, the Bar's evidence is utterly devoid of proof showing illegality, deceit, concealment, extortion or fraud practiced to induce the client's entry into an unconscionable obligation. In short, the client's sole avenue of legal relief is afforded her by the civil litigation process.
HODGES, J., concurring in part; dissenting in part.
¶ 1 I concur in the refusal to impose discipline on this lawyer. I must dissent, however, to this Court's failure to articulate a coherent rule to guide lawyers concerning contingent fees in probate matters. As both the majority and the dissenting opinions make some excellent points which are not mutually exclusive, I believe that there is middle ground on which to rest the disposition of this matter.
¶ 2 The problem with a contingency fee in this probate proceeding is that there are two things going on. First, the lawyer is to perform tasks for the personal representative. Second, the lawyer may have to defend the will on behalf of the personal representative. The contingency contract in this matter treated both things as one. The rule should be, as the dissent advocates, that the contingency fee agreement may apply only to the contingency of a will contest, not to the probate itself.
¶ 3 I would, however, give this lawyer the benefit of the doubt as to this contract. Southard v. MacDonald, 360 P.2d 940, 944 (Okla.1961), unequivocally rejected the notion that a contingent fee contract was void because it involved a probate proceeding. That action, however, involved the representation of an heir who challenged a will in probate. Thus, I would apply the rule articulated in the dissent prospectively to future Bar disciplinary proceedings in which a lawyer attempts to collect a contingency fee for efforts in merely performing tasks for the personal representative.
BOUDREAU, J., with whom KAUGER, J., joins, dissenting.
¶ 1 Respondent structured the contingency fee agreement with his client in a manner that allowed respondent to recover a large fee in connection with an inheritance which passed by law and without a will contest. In my view, the agreement, which allowed respondent to recover a contingency fee in a probate proceeding absent an actual challenge to the will, violated Rule 1.5(a) of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2001, Ch. 1, App. 3-A, which mandates that a lawyer's fee be reasonable. The fee agreement was unreasonable on its face because it allowed respondent to collect a large fee for efforts not related to the *829 defense of his client's testate share of the estate's assets but rather for routine probate services.
¶ 2 Peggy Hepler employed respondent to represent her as both the personal representative of the estate of Dewey Lawrence Hughes and as the beneficiary of that estate. Respondent and Hepler initially believed a will contest was probable. Respondent and Hepler entered into a contingency fee agreement in which Hepler agreed to pay respondent one third of the gross estate "upon the finalization of the probate of the will". The agreement also provided that Hepler would pay respondent forty percent of the gross estate in the event of a challenge to her testate share of the estate's assets. No challenge materialized and Hepler received her inheritance, without incident, under the will. Hepler paid Respondent $108,199.85, a third of the value of the liquid assets she inherited and respondent currently maintains an attorney lien claim against the unliquidated real property inherited by Hepler. If respondent is successful in maintaining his attorney lien claim to the real property, he will receive approximately $150,000 for his services to Hepler.
¶ 3 It is clear that contingency fee contracts may be utilized in probate proceedings. See Southard v. MacDonald, 1961 OK 72, 360 P.2d 940, 944 (while the statute appears to limit contingency fees to two types of cases, those arising ex contractu and ex delicto, the court refused to find such a contract void because it involved a probate proceeding). Nevertheless, contracts for contingent fees, generally having a greater potential for overreaching of clients than hourly fees, must be closely scrutinized by the court in furtherance of its duty to safeguard the interests of the public and maintain the integrity of the legal profession. See Committee on Legal Ethics v. Tatterson, 177 W.Va. 356, 352 S.E.2d 107, 114 (1986). Our duty to scrutinize contingency fee contracts applies to their use in probate cases.
¶ 4 An analysis of a contingency fee agreement between an attorney and his client must begin with the general rule that an attorney's fee be reasonable. Rule 1.5(a), ORPC. It has been long established that contingency fee agreements are subject to this reasonableness standard. Amount of Fee, ABA/BNA Lawyers' Manual on Professional Conduct, 41:901 (1994 Supp.).
¶ 5 A contingent fee is to be collected only if an attorney successfully champions the legal rights and claims of his client, with the result that the client is compensated through a settlement with, or judgment against, those who denied his claims. In re Gerard, 132 Ill.2d 507, 139 Ill.Dec. 495, 548 N.E.2d 1051, 1056 (1989). See also Pocius v. Halvorsen, 30 Ill.2d 73, 195 N.E.2d 137, 139 (1963)(an attorney's collection of a contingent fee depends upon the success or failure to enforce a supposed right). In this case, respondent did not successfully champion or enforce the legal rights of his client. It is undisputed that Hepler, as the beneficiary under the will, was entitled to the inheritance by operation of law. Respondent contributed nothing to establish or augment Hepler's recovery. His efforts, if any, were unrelated to the decision of the relatives not to contest the will.[1] He sat back, waited and "stressed over an expected claim", hoping that the will contest would never arise.
¶ 6 This contingency fee agreement which allowed respondent to recover in excess of a $150,000 for routine probate services, which the court valued at $13,000, is not a reasonable one. It is not unreasonable simply because it allowed respondent to receive a lot of money for a little work. The mere fact that a case involved less difficulty in work than was believed necessary at the outset will not render the fee unreasonable or unfair. See Fletcher v. Fletcher, 227 Ill.App.3d 194, 169 Ill.Dec. 211, 591 N.E.2d 91, 95 (1992). It is unreasonable because respondent's one third percentage was not conditioned upon an actual challenge to the will and accordingly allowed respondent to collect a large fee for *830 efforts not related to the defense of his client's testate share of the estate's assets but rather for routine probate services.
¶ 7 In my view, respondent certainly could have structured the contingency fee agreement to comply with Rule 1.5(a)'s requirement of reasonableness. The agreement simply needed to provide that his client was obligated to pay him the percentage fee in the event he successfully defended an actual challenge to the will pressed by one of the heirs at law. The agreement should have stated that if the client was merely provided with her already vested testate share of the assets without a challenge, the client should have been obligated to pay an hourly rate.[2] By setting an actual challenge to the will as a condition precedent to the effectiveness of the contingency fee agreement, respondent would have eliminated the possibility that he would recover a substantial fee without doing anything to establish or augment his client's recovery.
¶ 8 In summary, when a client retains an attorney to both represent the client as personal representative and to protect the client's testate or intestate share of the estate's assets, a contingency fee agreement should be allowed only when there is an actual challenge to the client's share of the estate's assets. Without a challenge, the attorney's services amount to nothing more than representing the client in the administration of the estate. In my view, a contingency fee agreement, such as this one, which allows an attorney to recover a substantial share of the estate's assets without an actual challenge violates Rule 1.5(a) on its face. By sanctioning such an agreement, this Court invites attorneys to enter into contingency fee agreements which allow them the possibility of recovering a significant portion of their client's estate assets without providing the client with services that establish or augment their recovery.
¶ 9 I am also of the view that it could have been determined that the contingency fee agreement was unreasonable based on the circumstances of the case at the time the contract was made.[3] Accordingly, I would a) administer a public reprimand to respondent, b) order that he pay the costs of this proceeding not later than 30 days after this Court's opinion becomes final, c) order respondent to make restitution to Peggy Hepler of all amounts he received beyond the probate court ordered attorney fees within 30 days of this Court's opinion becoming final, and d) order respondent to release his attorney's lien on Peggy Hepler's real property within 30 days of this Court's opinion becoming final.
NOTES
[1] "(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
"(3) the fee customarily charged in the locality for similar legal services;
"(4) the amount involved and the results obtained;
"(5) the time limitations imposed by the client or by the circumstances;
"(6) the nature and length of the professional relationship with the client;
"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
"(8) whether the fee is fixed or contingent."
[2] The burden of proving a proposition by clear and convincing evidence is expressed in the Oklahoma Uniform Jury Instructions, Instruction No. 3.2, as "highly probable and free from serious doubt."
[3] Preponderance of the evidence is expressed in the Oklahoma Uniform Jury Instructions, Instruction No. 3.1, as "greater weight of the evidence." Henderson v. State, 1977 OK CR 238, ¶ 4, 568 P.2d 297, 298.
[1] Rules of Prof'l Conduct, Rule 1 et seq., 5 O.S. 2001, Ch. 1, App. 3-A.
[2] The Florida Bar v. Moriber, 314 So.2d 145, 148 (Fla.1975); In matter of Greer, 61 Wash.2d 741, 380 P.2d 482, 486 (1963); See also Restatement (Third) of the Law Governing Lawyers § 34 cmt. f, p. 252 (2000) (the principle is often phrased as "overreach[ing] by deceiving the client").
[3] 5 O.S.2001, Ch. 1, App. 3-A.
[4] Restatement (Third) of the Law Governing Lawyers § 34 cmt. c, p. 249 (2000) (other factors include the client's sophistication, the disclosures made to the client, the client's ability to pay etc.); See also Gabriel J. Chin & Scott C. Wells, Can a Reasonable Doubt Have an Unreasonable Price? Limitations on Attorneys' Fees in Criminal Cases, 41 B.C. L.Rev. 1, 4-5 (1999).
[5] A contingency fee agreement for services in a probate case is facially valid. See Southard v. MacDonald, 360 P.2d 940, 944 (Okla.1961).
[1] In his brief respondent stated that his services to Hepler consisted of accumulating evidence, researching legal issues, preparing a plan, and thinking and stressing over expected claims. He makes no assertion that there was a causal connection between these efforts and the decision of the relatives not to contest the will.
[2] While respondent offered to handle both the administration of the estate and a potential challenge to her testate share of the estate on an hourly basis, Hepler declined. In my view, respondent's fiduciary duty obligated him to offer his client the option of an hourly contract if there was no actual challenge to the probate of the will and a contingency fee contract if a challenge materialized. I am also convinced that he was obligated to inform her that this fee arrangement was in her financial interest. The attorney-client relationship is one of highest trust and confidence and requires that the attorney's dealings with the client be characterized by the utmost candor and fairness. State ex rel. Oklahoma Bar Association v. Hatcher, 1969 OK 42, 452 P.2d 150, 153.
[3] The parties have stipulated that you could not tell the contingency fee contract was unreasonable at the time of contracting. However, "[w]henever this Court is called upon to function in its constitutional capacity as the state's exclusive licensing authority for legal practitioners, its decisions are made de novo. All facts responsive to the issues formed before the panel must be independently redetermined." State ex rel. Oklahoma Bar Association v. Cantrell, 1987 OK 17, 734 P.2d 1292, 1292 (Okla.1987). See also State ex rel. Oklahoma Bar Association v. Miskovsky, 1997 OK 55, 938 P.2d 744, 747.